8-14-24

Timothy J. Reichardt
REICHARDT NOCE & YOUNG LLC
12444 Powerscourt Dr. Ste. 160
St. Louis, MO 63131

Re: O'Hara v. Lott and Butler-Cherry, Case No. 4:23-cv-442-HEA

Dear Mr. Reichardt:

Please accept the following report which contains my expert opinions in the above-mentioned case.

Steve Ijames

Expert Report and Opinions

Re: O'Hara v. Lott and Butler-Cherry, Case No. 4:23-cv-442-HEA

My name is Steve Ijames. I was retained by Mr. Timothy J. Reichardt to review the material provided in this case, and then offer objective opinions concerning the interaction that occurred between Mr. Omar O'Hara and University City Police Officers on March 15, 2023.

Interactions between police officers and citizens often result in conflicting opinions, statements, and testimony concerning what occurred. In these situations the trier of fact must determine the weight and credibility of the information provided and the persons providing the information, as that is beyond the scope of a police practices expert. Likewise, for an expert to offer opinions concerning the police practices involved, certain assumptions must be made concerning the conflicting information when necessary.

I reached my conclusions by reviewing the material provided, making and referencing assumptions when necessary, and then drawing upon the totality of my knowledge, training, and continuous 46-year police experience. Upon this review and consideration I offer the following information and opinions.

**Opinion one:**

Sergeant Lott had adequate knowledge and reasonably trustworthy information, facts, and a totality of circumstances that were sufficient to lead a prudent, experienced, and professionally trained police officer to believe that Mr. Omar O'Hara had committed the crimes of operating a motor vehicle with a revoked license and while intoxicated. Accordingly, his arrest was not an unreasonable seizure but was based on a totality of circumstances that a prudent, experienced and professionally trained police officer would have recognized as adequate probable cause, and was not a "false arrest/imprisonment" but an arrest that was justified, appropriate, consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances.

**Opinion one is based on the following information:**

On August 12, 2024, at 1800 hours, I met with Sergeant Lott at the University City Police Department. I asked him to tell me about his interaction with Mr. Omar O'Hara on March 15, 2023. He told me that on 3-15-23 at about 0400, he observed a Blue Alfa Romeo without a front license plate pass through the interaction of Skinker and Delmar. His attention focused on the front of the vehicle (no license plate), and he did not observe the person who was driving. Sgt. Lott continued patrolling, and approximately ten minutes later he located what he believed was the same vehicle stopped on the roadway near the intersection of Delmar and Melville.



[1]

Suspect vehicle position as Sgt. Lott advised dispatch of his location.

Sergeant Lott said he activated his emergency lights and approached the vehicle on foot. He observed the driver-who was later identified as Mr. Omar O'Hara-passed out behind the steering wheel with the vehicle running and transmission in drive.



[2]

"Possible 1055 (DWI), passed out at the wheel".[3]

Sergeant Lott radioed for backup assistance, and shortly thereafter Officer Butler-Cherry arrived on scene. Sergeant Lott told me that he was concerned the driver was intoxicated

---

[1] Sgt Lott Dash tick54840335-tick54844181-video0, 02:15

[2] Sgt Lott BWC 00_0034692013_96_17_ee_b2-0034685492_0034688864_0034688902_video0, 01:08

[3] Ibid, 01:31

and would try to drive from the scene, so he formulated a plan to safely remove the driver and secure the vehicle. This involved him opening the driver's door while Officer Butler-Cherry provided cover and potential assistance from the passenger side. As he did this he awoke the driver, who appeared confused and was unable to put the vehicle in park. Lott said the driver appeared a little unsteady on his feet as he exited, and he then did a light check for weapons and passed him to Butler-Cherry. Lott then entered the vehicle and placed it in park. Sergeant Lott said that he had the driver step to the west sidewalk and he asked him if he had a drivers license. The driver replied that he had a license, not on him. The driver then gave his name (Omar O'Hara) and date of birth. This information was noted by Officer Butler-Cherry, who would later run it in the MULES computer system to determine his license status and prior DWI history after the field sobriety tests. Sergeant Lott said he could smell the odor of alcoholic beverage on Mr. O'Hara. He then asked him if he would be willing to perform some field sobriety tests-and if he had any medical conditions that would prevent him from doing so. Mr. O'Hara said that he had fallen down some stairs recently, but that he could perform the tests. Sgt. Lott said he then gave Mr. O'Hara his rights per the Miranda decision, and had him conduct the following field sobriety tests:

- Horizontal Gaze Nystagmus. Prior to the test he saw both eyes tracked equally, the pupils were of equal size, and he did not observe any resting nystagmus. He then observed a lack of smooth pursuit present in both eyes, and distinct and sustained nystagmus was present at maximum deviation. These are signs/symptoms of suspected drug/alcohol impairment.



[4]

- One leg stand (OLS): Sgt. Lott told me that he explained and demonstrated how to perform the one leg stand (OLS) test. Mr. O'Hara said he did not understand, so Lott explained and demonstrated it again. Mr. O'Hara attempted to perform the test, and Lott said he held his arms out to the side to assist with balance. Lott said he reminded him to leave his arms at his sides. Mr. O'Hara began the test again but then stopped counting. Lott said Mr. O'Hara then put his leg back on the ground at the "6" count. Lott said he reminded Mr. O'Hara that he was not instructed to stop.

[4] Ibid, 13:06, HGN test being administered

Mr. O'Hara began the test again. This time he counted to "4" before having to lift his arms to steady himself, and then continued counting to "16" until being told to stop. Sgt. Lott said based on his training and experience, he considered the above test results as signs/symptoms of suspected drug/alcohol impairment.



One leg stand test being demonstrated by Sgt. Lott.[5]

- Walk and Turn. Sgt. Lott said that he explained and demonstrated the walk and turn test for Mr. O'Hara, who replied that he "did not understand". The test was then explained and demonstrated again.


Walk and turn being demonstrated by Sgt. Lott.

Lott said that Mr. O'Hara then attempted the test, and the following results were observed.

1. Failed to maintain a heel toe stance during the directions phase.
2. Did not touch heel to toe, and missed more than 1/2 inch with each step.
3. Loss of balance and stepping off the line on multiple steps.

[5] A07_20230315041954, 12:10

Sgt. Lott said based on his training and experience, he considered the above test results as signs/symptoms of suspected drug/alcohol impairment.

In consideration of the totality of circumstances presented (finding Mr. O'Hara passed out behind the wheel of a running motor vehicle that was in drive, his confusion and dexterity upon contact/exiting the vehicle, the odor of intoxicating beverage on his breath and person, and the results of the three field tests), Sgt. Lott determined that he had probable cause to believe Mr. O'Hara was operating a motor vehicle while intoxicated. Accordingly, he intended to place him under arrest. He then asked Officer Butler-Cherry if she had "run" Mr. O'Hara, and she responded that his driver's license was revoked, and that he had two prior DWI arrests. In response to the observations that are described above, and the information received from Officer Butler-Cherry, Lott then placed Mr. O'Hara under arrest for operating a motor vehicle with a revoked drivers license and operating while intoxicated.

On August 12, 2024, at 1850 hours, I met with Officer Butler-Cherry at the University City Police Department. I told her that I wanted to talk about the police interaction with Mr. Omar O'Hara on March 15, 2023. She had created a police report documenting that interaction, under University City report number 23-4977. A partial report narrative is provided below.

On 03-15-2023, at 0416 hours, I responded to the intersection of Delmar and Melville to assist Sgt. Lott DSN 469 with a suspicious vehicle stop. Sgt Lott advised over the radio that he was investigating a suspicious vehicle, stopped in the middle of the roadway, in the 600 block of Melville. Upon my arrival, I observed Sgt. Lott standing on the drivers side of the vehicle (later identified as a Navy, 2018, Alfa Romero Stileo, bearing MSL:NTROPE). The Stileo was running, in drive, and occupied by one male subject, who was passed out at the wheel. Sgt. Lott advised that he did not attempt to wake the male subject, because he was asleep, with the vehicle running and in drive, and his foot on the brake. I responded to the passenger side of the vehicle and slowly opened the passenger door. Sgt. Lott then opened the drivers door to the Stileo and grabbed the gear shifter, in an attempt to put the Stileo in park. As Sgt. Lott was attempting to put the vehicle in park, the male driver (later identified as suspect Omar E. Ohara) of the vehicle woke up. Sgt. Lott explained to the Ohara that he was passed out and he needed him to put his vehicle in park. Ohara, who appeared to be disoriented, did not comply. Sgt. Lott gave Ohara several more commands to place the vehicle in park and to step out of the vehicle. After instructing Ohara to step out of the vehicle four times and to put the vehicle in park, Sgt. Lott applied the emergency brake, allowing Ohara to exit the vehicle. While attempting to stand from a seated position, Ohara appeared to be unsteady on his feet and used the car door to assist him in standing and to steady himself. Once out of the vehicle, Sgt. Lott instructed Ohara to step over to the west sidewalk of the 600 block of Melville. Once we were out of the roadway, onto the sidewalk, the male driver further identified himself as:

Omar Ohara
B/M, 12-01-1974.

Ohara told me that he had just come from hanging out at Blueberry Hill with a few of his friends. Sgt. Lott told Ohara that he had observed him driving on Skinker Blvd. earlier, which was a few blocks from our current location. Ohara then changed his statement and stated after leaving Blueberry Hill, he gave a friend of his a ride home, and then he was en route to his residence (1131 W. Parkedge). Sgt Lott asked Ohara if he had a driver's license. Ohara stated that he had a valid license, however, he did not have it with him. Sgt. Lott asked if he would be willing to perform some field sobriety test, and if he had any medical conditions that would prevent him from doing so. Ohara advised he had previously fallen down some steps. Ohara stated that he, however; could and would perform the tests. Sgt. Lott was requesting of him. Sgt. Lott then read Ohara his Rights Per Miranda, to which Ohara stated he understood. Sgt. Lott first conducted the Horizontal Gaze Nystagmus test. During the test he noted the following signs/symptoms of possible drug/alcohol impairment:

Both eyes tracked equally, the pupils were of equal size and no resting nystagmus was present.
Lack of smooth pursuit was present in booth eyes.
Distinct and sustained nystagmus was present at maximum deviation.

Sgt. Lott then explained and demonstrated the One Leg Stand. Ohara stated he did not understand and asked to be shown/told how to perform the test again, to which Sgt. Lott complied. After explaining and demonstrating the test again, Ohara then stated he understood and attempted to perform the test. These are the signs of impairment noted by Sgt. Lott.

Ohara began the test, and shortly thereafter, held his arms out to the side to assist with balance. Sgt. Lott then reminded Ohara to leave his arms to his sides. Ohara began the test again and stopped counting, and put his leg back onto the ground at "6". Sgt Lott then informed Ohara that he was not instructed to stop. Ohara began the test again. This time counting to "4" before lifting his arms to steady himself, and then continued through to "16" until he was told to stop.

Sgt Lott then demonstrated and performed the Walk and Turn. Ohara stated that he did not understand and asked to be told/shown the test again, to which Sgt. Lott complied. This is what was observed as possible signs/ symptoms of impairment:

Ohara failed to maintain a heel toe stance, during the directions phase. Ohara did not touch heel to toe and missed more than 1/2 inch with each step. Ohara was observed losing his balance and stepped off of the line on multiple steps.

I then responded to my patrol vehicle and instructed Communications to conduct a computer inquiry concerning Ohara's Missouri drivers license. A computer search revealed Oharas' drivers license was currently revoked, and at least two prior DWI arrest (2018 and 2023). It should be mentioned, 02-11-2023, Ohara was arrested for DWI by UCPD officer Goldstein #518 (see UCPD report #23-). Sgt Lott then informed Ohara that he was under arrest and gave him a law order to place his hands behind his back.[6]

I asked her why she had written the report, considering Sgt. Lott had made the arrest. She told me that the University City Police practice is that when an officer and supervisor are both involved in a call for service, the patrol officer writes the report. I asked her how she was aware of the information she wrote concerning things that were attributed to Sgt. Lott (such as his observations on the HGN test). She told me that she had talked with him concerning what had occurred and he had observed, and wrote her report accordingly. In addition, she had personally observed everything that was documented in her report besides the HGN test, and that her report accurately characterized what she believed had occurred.

I reviewed the dash and body worn camera video from Sgt. Lott, the body worn camera video from Officer Butler-Cherry, and the Blueberry Hill surveillance video. The video provided objective information concerning Mr. O'Hara being found passed out behind the wheel of his running motor vehicle that appeared to be in drive, as well as his condition upon contact and outside the vehicle. If it is assumed that the information provided by Sgt. Lott and Officer Butler-Cherry accurately characterizes what they observed and or reasonably perceived and believed, then the totality of circumstances outlined above would have been adequate knowledge and reasonably trustworthy information and facts, sufficient to lead prudent, experienced, and professionally trained police officers to believe that Mr. Omar O'Hara had committed the crimes of operating a motor vehicle with a revoked license and while intoxicated. Accordingly, his arrest was not an unreasonable seizure but was based on a totality of circumstances that a prudent, experienced and professionally trained police officer would have recognized as adequate probable cause, and was not a "false arrest/imprisonment" but an arrest that was justified, appropriate, consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of prudent, experienced, and professionally trained police officers facing these or similar circumstances.

**Opinion two:**

The soft empty hand, TASER, and hard empty hand (kicking/striking) force used by Sgt. Lott against Mr. Omar O'Hara was based on adequate cause, basis, and provocation, was used to overcome the resistance to arrest being put forth, was used to control/secure/recover and prevent the unlawful procurement of a police weapon (TASER) by the suspect, was in self-defense and defense of others, and was to effect an arrest. Accordingly the force used was not excessive, was consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar

[6] Butler-Cherry narrative report, Report 23-4977, pages 6-7

circumstances, and was consistent with commonly accepted police training, policy, and practice when facing these or similar circumstances.

**Opinion two is generally based on the following information:**

Sgt. Lott completed his field sobriety tests. He was then told by Officer Butler-Cherry that Mr. O'Hara was revoked and had two prior DWI arrests. Upon consideration of the totality of information observed and presented, he had adequate cause and basis to arrest Mr. O'Hara (as addressed in opinion one and the related basis above). Accordingly, he walked towards Mr. O'Hara and told him, "put your hands behind your back" while gently grabbing him by his right arm.

[7]

Sgt. Lott grabbing Mr. O'Hara after telling him to put his hands behind his back.

Mr. O'Hara responded to this by saying, "why"? It appeared on the video that Mr. O'Hara began to back/pull slightly away from Sgt. Lott, who then said, "Sir, you don't want to do that". Mr. O'Hara again said, "why", and Sgt. Lott replied, "sir, you're under arrest". "You're under arrest for driving-and you're revoked". Officer Butler-Cherry then moved up and grabbed Mr. O'Hara by his left arm, as Sgt. Lott again ordered Mr. O'Hara to "put your hands behind your back sir". The tone and degree of physical contact by both officers was polite, professional, and measured. Mr. O'Hara again refused the orders stating, "no, not until you tell me why".[8] Sgt. Lott ordered a third time, "put your hands behind your back sir", and then "put your hands behind your back-this is my last time asking(4)". "Put your hands behind your back for me, come on (5)". "Put your hands behind your back (6)". "Mr. O'Hara, put your hands behind your back (7)". "You're under arrest, last time-hands behind your back-please (8)". "Please-come on (9)". Officer Butler-Cherry then also asked

[7] Sgt Lott BWC 00_0034692013_96_17_ee_b2-0034685492_0034688864_0034688902_video0, at about 18:00
[8] Ibid, at about 18:12

Mr. O'Hara to "put your hands behind your back sir-please".[9] Mr. O'Hara had been told verbally he was under arrest, and then given ten separate verbal control commands over approximately forty seconds, while Lott and Officer Butler-Cherry used soft empty-hand physical control measures in an attempt to gain his cooperation and place him in handcuffs. This minimally intrusive effort was ineffective. Sgt. Lott is a use of force (TASER) instructor, who understands that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion to effect it".[10] He said that after Mr. O'Hara had been told he was under arrest several times, then given ten orders over approximately forty seconds to place his hands behind his back, he decided to use his TASER to overcome the resistance he was facing, gain compliance to his lawful commands, and effect the revocation and DWI arrest. He further stated that based on his knowledge, training, and experience, he believed the most likely way to safely achieve this objective at close range was to briefly use the TASER in the drive stun mode. This was consistent with TASER training[11] which supports the brief application of pain compliance in this manner-which was the next reasonable step as it was clear Mr. O'Hara was not going to voluntarily comply with their verbal commands. Accordingly, he removed the cartridge and activated the TASER in the drive stun mode to the right rear rib cage area of Mr. O'Hara. He told me that (based again on his knowledge, training, and experience) he expected the contact with the device would cause Mr. O'Hara to immediately comply with his commands and allowing the application of the handcuffs, "as most people do". Instead-as reported by Sgt. Lott and observed on video-Mr. O'Hara quickly turned to his right, reached behind his back, and grabbed the TASER in Sgt. Lott's hand.



[12]

Mr. O'Hara reacting and reaching for the TASER.

---

[9] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at about 13:51
[10] Graham v. Connor, 490 U.S. 386, 396 (1989)
[11] TASER X26P training less plan, UCity U568
[12] Ibid at about 13:54



[13]

Mr. O’Hara reaching behind his back and grabbing the TASER.

What followed was approximately twenty-five seconds of physical struggling between Sgt. Lott and Mr. O’Hara over direct control of the TASER. Sgt. Lott told me that Mr. O’Hara was “trying to take my TASER”, and this felonious disarming attempt resulted in the TASER trigger being pulled as Sgt. Lott ultimately used kicks, grappling, a takedown, and closed fist/elbow strikes, and Officer Butler-Cherry used hands on grappling techniques in their attempts to overcome the resistance, prevent disarming, defend self and others, gain compliance, regain control of the TASER, and effect the arrest.



[14]

Sgt. Lott and Mr. O’Hara struggling for control of the TASER.

[13] Sgt Lott BWC 00_0034692013_96_17_ee_b2-0034685492_0034688864_0034688902_video0, at about 18:35
[14] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at about 13:59



[15]

Sgt. Lott delivering a distraction technique (kick) in coordination with his attempts at regaining control of his TASER from the suspect's hand.

Sgt. Lott told me that during the fight over the TASER he was able to pull the device from the suspects' hands just as they were going to the ground.


[16]

Sgt. Lott taking Mr. O'Hara to the ground for safer control and handcuffing. He had regained possession of his TASER at this point, and it can be seen in his right hand.

---

[15] A07_20230315041954 at about 16:44
[16] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at about 14:05



[17]

Mr. O'Hara grabbing Sgt. Lott's right arm/wrist, which is holding the TASER.

Mr. O'Hara landed on the ground and rolled onto his back. Sgt. Lott kneeled across the front of the suspects body and grabbed his right arm to initiate the handcuffing process. Mr. O'Hara responded by immediately grabbing Lott's right wrist, which was just above the TASER. Sgt. Lott turned towards Officer Butler-Cherry and said, "call for help-call for help".[18] Lott addressed this point of the interaction during our interview stating, "I fell and rolled, and put myself on top of him, left elbow across his sternum/solar plexus. He then grabbed the TASER again with both hands-and ripped it out of my hands."[19] The BWC video from Officer Butler-Cherry shows in the frame above (14:09) that Mr. O'Hara is grabbing Sgt. Lott's right wrist, and the TASER (illuminated data screen) is visible just below. Five seconds later (14:14-14:16) Sgt. Lott can be heard yelling "let go of the TASER-let go of that TASER", and in the frame below (14:15) Lott can be seen drawing his right arm and fist back-without the TASER-to strike Mr. O'Hara.[20]

---

[17] Ibid at about 14:09
[18] Ibid
[19] Interview at police headquarters on August 12, 2024
[20] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at 14:14-16


[21]

Upon losing possession of the weapon, Lott ordered the suspect to "let go of the TASER" twice and struck him in the face with a closed fist. Sometime during this striking to defend/control/regain possession of the TASER process Mr. O'Hara "let go of the TASER" by throwing it into the street. Sgt. Lott told me that Mr. O'Hara then, "grabs me, hits me near the chin-not hard-I think he was trying to grab and roll me. So I hit him and then elbowed him to stop the fight. The elbow worked, and he stopped the resisting".[22]



[23]

Mr. O'Hara appearing to be "grabbing/hitting" at Sgt. Lott as described above.

[21] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at about 14:15
[22] Interview at police headquarters on August 12, 2024
[23] Butler Cherry BWC 00_0128770910_96_09_6c_46-0128609678_0128767317_0128767352_video0, at about 14:19

[24]

Sgt. Lott appeared to be trying to control the "grabbing/hitting" described above.



[25]

Mr. O'Hara discarded the TASER he had reportedly taken from Sgt. Lott and discontinued his active and assaultive resistance after the delivery of the closed fist and elbow strikes.[26]

[24] Ibid at about 14:20
[25] Ibid at about 14:32
[26] Ibid

Officer Butler-Cherry had called for "expeditated assistance", and while waiting for backup Sgt. Lott asked several times if he (Mr. O'Hara) was ready to roll over and be placed in handcuffs.[27] Mr. O'Hara replied, "why, I didn't do anything".[28]



[29]

Additional officers (5) arrived to assist. The BWC video indicates that he actively resisted their verbal and physical handcuffing efforts, and it took the additional personnel approximately forty-five seconds to secure him in handcuffs. Sgt. Lott told me that during this period of time he discharged his TASER in drive stun mode (one cycle) to assist in overcoming the resistance the six officers were facing and facilitate handcuffing.

**Specific basis for opinion 2 (a)-the use of soft empty hand physical control:**

Police officers routinely have to go "hands on" with persons who have been told they are under arrest and refuse to follow commands to submit to handcuffing pursuant to that arrest, as in this case. Physical control (hands on techniques) are less lethal/non-deadly force control efforts referred to as "soft empty hand control" and defined by the National Institute of Justice (NIJ) as "grabs, holds, and joint locks".[30]

The International Association of Chiefs of Police (IACP) is the oldest and most respected police organization in existence. Founded in 1893, it has members in over 100 countries, and practically every police chief and most sheriffs in the United States are members. In 1987 the IACP and Federal Bureau of Justice Assistance created the National Policy Center (NPC). The goal of the NPC was to create model policies that reflect contemporary and best police practices, and to assist member agencies in the formal

---

[27] Ibid 14:43-48.
[28] Ibid 14:51
[29] A07_20230315041954 at about 17:45
[30] https://nij.ojp.gov/topics/articles/use-force-continuum

creation of their own operational practices and protocols. I served as a contributor, policy writer, and or member of the IACP/NPC for approximately twenty-five years. The IACP had a model policy on the use of force in effect at the time of this interaction, that addressed this type of control force in the following manner:

LESS-LETHAL FORCE: Any use of force other than that which is considered deadly force that involves physical effort to control, restrain, or overcome the resistance of another.[31]

Use of Less-Lethal Force:

When de-escalation techniques are not effective or appropriate, an officer may consider the use of less-lethal force to control a non-compliant or actively resistant individual. An officer is authorized to use agency-approved, less-lethal force techniques and issued equipment

1. to protect the officer or others from immediate physical harm,
2. to restrain or subdue an individual who is actively resisting or evading arrest, or
3. to bring an unlawful situation safely and effectively under control.[32]

In addition, the University City Police Department Use of Force Policy[33] addresses the use of force generally, and non-deadly force in particular, as follows:

NON-DEADLY FORCE: That force which is necessary to overcome resistance or accomplish a lawful objective which, when properly used, would not likely cause death.[34]

USE OF FORCE:

A. Control is required in making an arrest. In most instances, the officer's tone of voice, demeanor, and actions will suffice. However, when a suspect resists arrest, officers shall use the force necessary to overcome that resistance to effect the arrest. Officers shall use an escalating scale of force. The force used by the officer shall be determined by the level of resistance used, and the threatened use of physical force or physical interference, by the suspect.

B. This escalating scale of force, also known as the "FORCE CONTINUUM," ranges from mere presence of the officer up to and including the use of deadly force. The following is the force continuum:

1. Officer Presence (Professional, respectful, attentive and observant).
2. Voice/Request (De-escalation skills and problem-solving techniques).
3. Command (Directives given to remedy the situation).
4. Soft Empty Hand Control (non-pain compliance, guidance)- NO CHOKEHOLDS, STRANGLEHOLDS, OR VASCULAR NECK RESTRAINTS.

---

[31] National_Consensus_Policy_On_Use_Of_Force 07102020 v3.pdf (theiacp.org), definitions, page 2

[32] Ibid, Use of less lethal force, page 3

[33] Agency Use of Force Policy, 3-01, page 3

[34] Ibid, page 2

```
Example: Escorting subject holding an arm or wrist. Subject is not
resisting. 5. Pressure Points (pain compliance) such as the PPCT
Mandibular Angle Pressure Point (base of ear lobe). NO  CHOKE
HOLDS, STRANGLEHOLDS, OR VASCULAR NECK RESTRAINTS.
6. Pepper Mace/ OLEORESIN CAPSICUM (O.C.) SPRAY- NO MOUTH TARGETS.
7. TASER Model X26 - Less Lethal- NO HEAD SHOTS.
8. Hard Empty Hand Control Joint locks/wrestling/take downs). NO
CHOKEHOLDS, STRANGLEHOLDS, OR VASCULAR NECK RESTRAINTS.
9. Physical Strikes (empty hands and feet).
Examples: PPCT/Punch/Kick.
```

The totality of circumstances in this case would have caused prudent, experienced, and professionally trained police officers to believe that the use of soft empty hand physical control-grabbing Mr. O'Hara on the arms as verbal commands were given-was appropriate, intended to protect officers from physical harm, arrest/restrain/subdue Mr. O'Hara, and bring an unlawful situation safely and effectively under control. That is what initially occurred, as the officers were  telling Mr. O'Hara he was under arrest and giving him ten verbal directives to put his hands behind his back. Regretfully. Mr. O'Hara refused to follow those commands, which forced Lott to take additional steps to accomplish his lawful police objectives. Accordingly, the limited and minimally intrusive soft empty hand contact at this and later (grappling) stages were consistent with both national force standards (IACP) and agency force standards as outlined above, consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of prudent, experienced, and professionally trained police officers facing these or similar circumstances.

**Specific basis for opinion 2 (b)-the use of the TASER:**

The TASER was designed to use electricity to override voluntary motor responses or apply discomfort in order to gain compliance and overcome resistance.[35] The TASER has been used in law enforcement for over 40 years and has the potential to overcome resistance in cases where suspects are mind/body disconnected, and or when verbal directives and less intrusive control measures such as soft empty hand control efforts have proven ineffective. The TASER has a statistical history of safe and effective use when compared to other control measures, and numerous studies confirming this have been published in medical literature.[36] [37] [38] [39] The IACP has a model policy on electronic control devices (TASER), which in American policing is the most referenced document of its type. I am the author of this policy which provides guidance concerning when a TASER is authorized for use:

---

[35] International Association of Chiefs of Police, Model policy on Electronic Control Weapons, page 1, definitions

[36] https://newsroom.wakehealth.edu/News-Releases/2009/01/Nationwide-Taser-Study-Finds-Serious-Injuries-Rare-after-Taser-Use

[37] https://www.ncjrs.gov/pdffiles1/nij/233432.pdf

[38] Bozeman, William P., Jason P. Stopyra, David A. Klinger, Brian P. Martin, Derrel D. Graham, James C. Johnson III, Katherine Mahoney-Tesoriero, and Sydney J. Vail. *Journal of trauma and acute care surgery* 84, no. 3 (2018): 466-472.

[39] https://www.sciencedirect.com/science/article/abs/pii/S1752928X2030055X

1. The ECW (TASER) is generally authorized to be used in circumstances where grounds to arrest or detain are present, and the subject's actions cause a reasonable officer to believe that physical force will be used by the subject to resist the arrest or detention. Such actions may include but are not limited to:
    a. use of force against the officer or another person
    b. violent, threatening, or potentially violent behavior
    c. physically resisting the arrest or detention[40]

The totality of circumstances in this case would have caused prudent, experienced, and professionally trained police officers to believe that Mr. O'Hara had ignored multiple (10) control commands and was actively resisting arrest by backing/pulling away. In addition, the agency TASER policy[41] says that the device is authorized for use one level above soft empty-handed techniques on the force continuum,[42] which is when Sgt. Lott initially decided to use it to overcome the resistance put forth by Mr. O'Hara. The policy also says that:

A. The X26 TASER may be used in those situations where:
1. A subject is threatening himself, an officer, or another person with physical force and other means of controlling the subject are unreasonable or could cause injury to the officer(s), the subject(s) or others.
2. In cases where officer/subject factors indicate the officer(s), offender(s) or others would be endangered by the use of physical force.
3. Other means of lesser or equal force have been ineffective or impractical, and[43] the threat still exists to the officer(s), subject(s) or others.[44]

In consideration of the totality of circumstances presented in this case a prudent, experienced, and professionally trained police officer would have considered Mr. O'Hara meeting all three of the criteria referenced above initially, and later during the physical fight that followed. Accordingly, the limited and minimally intrusive use of the drive stun as planned and intended by Sgt. Lott, and the attempts/use during the fight that followed were consistent with both national force standards (IACP) and agency force standards as outlined above, and consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances.

---

[40] Ibid C, deployment
[41] Agency TASER policy, 3-01a
[42] Ibid page 1
[43] Ibid page 3
[44] Ibid page 4

**Specific basis for opinion 2 (c)-hard empty hand physical control-,kicking/striking force:**

The National Institute of Justice (NIJ) recognizes "hard techniques" as an officer's use of bodily force-specifically referencing defensive counterstrikes as strikes and punches to gain control of a situation.[45] In addition, Pressure Point Control Tactics (PPCT) is one of the most recognized and widely used defensive tactics systems in American Policing-and one recognized by the University City Police Department.[46] The PPCT system advocates the use of hard empty hand kicks and strikes in appropriate circumstances to:

- Stop the momentum of an aggressive offender and set him up for follow up control techniques.[47]
- Create motor dysfunction.[48]

The PPCT system also addresses weapon retention and disarming, with the technical focus being on securing the weapon, disarming, and then stunning the suspect.[49] The IACP addresses non-deadly force as outlined previously above, as does the University City Police Use of Force Policy as previously referenced above, specifically addressing and authorizing the techniques used in the case when the need for control escalates above the TASER-as in this case-to the following:

8. Hard Empty Hand Control Joint locks/wrestling/take downs). NO CHOKEHOLDS, STRANGLEHOLDS, OR VASCULAR NECK RESTRAINTS.
9. Physical Strikes (empty hands and feet).
Examples: PPCT/Punch/Kick.[50]

Sgt. Lott was facing an actively resisting suspect who was attempting to take his TASER from him. The TASER is a less lethal weapon when used lawfully as designed and intended. Likewise, in the hands of a suspect who has feloniously taken it from a police officer and is using it or potentially using against him while resisting arrest (as a striking instrument, or electronically to gain tactical advantage and increase the probability of causing death or serious physical injury), the device has provided adequate cause and justified basis for the use of deadly force on numerous occasions nationwide. Accordingly, Sgt. Lott had his hands fully occupied as he tried to regain control of the weapon Mr. O'Hara was feloniously trying to take from him. In response, he used the only control option he had available-his legs-and he appropriately directed what appears on video[51] (and in conversation) to be two kicks towards the femoral nerve/groan area. Those kicks were not effective. The struggle for the TASER continued until Lott was able to gain complete control of it, at about the time he "flipped" Mr. O'Hara to the ground. This resulted in Lott tripping and falling to the ground as well. Mr. O'Hara landed on his back, and Lott tripped and recovered to a position across his upper body as described previously above. Lott told me that he grabbed the suspect's right hand to initiate the handcuffing procedure, and

---

[45] https://nij.ojp.gov/topics/articles/use-force-continuum
[46] Use of Force Policy, page 2, definitions
[47] PPCT defensive tactics instructor manual, page 6-12/22
[48] Ibid page 6-2
[49] Ibid pages 9-1/8
[50] Use of Force Policy, page 3
[51] A07_20230315041954 at about 16:42-45

within seconds the suspect had pulled the TASER from his hand. In response to losing complete control of the TASER, Lott said he struck the suspect with a closed fist in the face several times while yelling "let go of the TASER", then at least once with an elbow strike-which ultimately caused him to stop resisting.

In consideration of the totality of circumstances presented, a prudent, experienced, and professionally trained police officer would have considered Mr. O'Hara a significant and dangerous threat as he was feloniously attempting to and reportedly did gain full control of the TASER while unlawfully resisting arrest. The PPCT training system teaches that "an attack on an officer's weapon is a deadly force encounter, and any level of force necessary to survive the attack is justified".[52] This specific reference is on handgun retention, but the principle-in context-is the same. An attack on an officer's weapon is a significant attack on the officer, and the inherent danger created by the possession of a TASER weapon in the hands of an offender (as referenced above-striking instrument, electronic incapacitation capability). Accordingly, any reasonable level of force necessary-including the only tool Sgt. Lott had available (his legs) in the initial upright scuffle, and the closed fist and elbow strikes-would be reasonable, justified, and consistent with generally and commonly accepted police training, policy, and practice.

Accordingly, the use of the hard empty hand techniques (kicks and strikes) described above during the fight to prevent the initial loss of the TASER, and then to regain possession of it or separate it from the suspect following the reported loss on the ground were consistent with both national force standards (IACP) and agency force standards as outlined above, and consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances.

**Specific basis for the manner of force used:**

A secondary aspect of assessing the appropriateness of the force used in this case involves the manner of the force used.

(a). Soft empty hand/grappling: The manner of hand and arm control, grappling type techniques used by the officers in their attempts to overcome resistance to arrest and place Mr. O'Hara in handcuffs during the initial phase as described above was consistent with generally and or commonly accepted police training, policy, and practice.

(b). The manner of TASER use involves the type of use (probe vs. drive stun) and the number and duration of cycles involved. The TASER International/Axon training program is the industry standard for providing the basic information necessary to use the device safely and effectively, and primarily focuses on the technical aspects of the device and related product warnings. TASER International/Axon does not train on the operational rules of engagement. This is consistent with other police equipment manufacturers, and with the expectation and understanding that agencies will teach officers to use TASER force when legally justified-which varies by jurisdiction-and consistent with agency policy.[53] The TASER training program addresses the number and duration of cycles by cautioning officers to "Avoid Extended, Repeated, or Prolonged TASER CEW applications when practicable", and that is consistent with the University City training PPT,

---

[52] PPCT defensive tactics instructor manual, page 9-27

[53] Personal knowledge, based on my experience as a TASER master instructor

which I reviewed. I reviewed the download data that was provided as reflective of the device used in this case.

TASER PROTECT LIFE EVIDENCE SYNC

**TASER Information**
**Serial** X12009VY6
**Model** TASER X26P
**Firmware Version** Rev. 04.037
**Application Version** 3.21.3
**Health** Good

**Offline Report**
**Local Timezone** Central Daylight Time (UTC -05:00)
**Generated On** 17 Oct 2023 19:48:12

**Dates from : Wed Mar 15 01:00:00 2023 to : Wed Mar 15 10:00:00 2023**

**Device (X26P)**

| Seq # | Local Time [DD:MM:YYYY hh:mm:ss] | Event [Event Type] | Duration [Seconds] | Temp [Degrees Celsius] | Batt Remaining [%] |
|---|---|---|---|---|---|
| 772 | 15 Mar 2023 04:32:20 | Armed | | 23 | 79 |
| 773 | 15 Mar 2023 04:32:28 | Trigger | 12 | | 79 |
| 774 | 15 Mar 2023 04:32:41 | Trigger | 3 | | 78 |
| 775 | 15 Mar 2023 04:32:45 | Safe | 25 | 25 | 78 |
| 776 | 15 Mar 2023 04:33:50 | Armed | | 23 | 78 |
| 777 | 15 Mar 2023 04:33:51 | Trigger | 5 | | 78 |
| 778 | 15 Mar 2023 04:34:20 | Safe | 30 | 25 | 78 |
| 779 | 15 Mar 2023 04:45:54 | Armed | | 18 | 78 |
| 780 | 15 Mar 2023 04:45:55 | Trigger | 5 | | 78 |

[54]

The data indicates sequence 773 was a 12-second cycle ending at 04:32:28. I talked with Sgt. Lott about this cycle, and he told me that he touched the device against Mr. O'Hara and pressed/released the trigger, intending to let it run for a single 5-second cycle. Mr. O'Hara immediately grabbed the device, and in the struggle for control that followed the trigger was unintentionally held. As noted on the video, the device was not in continuous contact with anyone during that time, but in the hands of Lott and Mr. O'Hara as they struggled for possession. The next sequence was 774, which indicates that the device cycled for 3 seconds immediately after sequence 773, with zero delay between the two cycles. This indicates that the trigger on the TASER was released between the sequences and immediately pulled again, resulting in a continuous 15-second cycle. I reviewed the Blueberry Hill surveillance video, which documents the approximate time that the drive stun was initiated (sequence 773), and the approximate time the second cycle terminated (sequence 774) following the completion of the 15 seconds of cycle. These times are documented in the frames below.

[54] Download data provided in this case



[55]

TASER was initiated.



[56]

TASER was terminated 15 seconds later.

Officer Butler-Cherry provided the written report that documented this interaction, under report number 23-4997. In her report narrative she wrote that the following TASER interaction occurred on the ground-from her perspective and from her conversation with Sgt. Lott afterwards.

While struggling to gain control of Ohara while on the ground, Sgt Lott, now on top of Ohara, administered at least two more drive stuns from his Taser, to the stomach/lower torso area of Ohara. Ohara continued to resist and was subsequently able to take possession of Sgt Lott's taser; at which time Ohara

[55] Ibid
[56] Ibid, at about 16:52

tossed the Taser several feet east of our location into the middle of the street.[57]

I spoke with Sgt. Lott concerning the TASER use while struggling with Mr. O'Hara on the ground, and he is uncertain exactly what occurred. The objective download data clearly indicates that there were not "at least two more drive stuns from his Taser" delivered as perceived and written in the police report by Officer Butler-Cherry. The timing of the takedown video and download data indicates that the TASER was cycling at least initially when they went to the ground, and in a violent struggle the perception of that (movement of the device and activation sounds) being separate and or intentional applications is understandable. It is important to note that had Sgt. Lott been able to use the TASER in the drive stun mode to assist with overcoming resist and control, and that was documented as having occurred on the download data as perceived and reported by Butler-Cherry, that would have been appropriate and consistent with both national force standards (IACP) and agency force standards as outlined above, and consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances. Sgt. Lott did use his TASER (sequence 777) for a five second cycle in drive stun mode, to assist the other officers as Mr. O'Hara continued to resist handcuffing. This occurred approximately one minute after the backup officers arrived, and the use to overcome the continued resistance being faced was consistent with both national force standards (IACP) and agency force standards as outlined above, and consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances.

**Overall Force Assessment:**

In assessing whether the overall force used and referenced above was consistent with generally and commonly accepted police training and practice, the totality of circumstances presented should be viewed in the context of the key factors referenced under *Graham v. Connor.*[58]

- **The severity of the crime involved**: The totality of circumstances presented would have caused a prudent, experienced, and professionally trained police officer to believe that Mr. O'Hara had been placed under arrest for operating a motor vehicle under revocation and while intoxicated, and that he then feloniously disarmed and assaulted a police officer while resisting the above referenced arrests.
- **The immediate threat to the safety of officers or others**: Mr. O'Hara was actively and assaultively resisting arrest, was attempting to disarm Sgt. Lott and reportedly disarmed Sgt. Lott. The TASER is a less lethal device when used lawfully as designed and intended. Likewise, in the hands of a suspect who has feloniously taken it from a police officer and is using it or potentially using against him while resisting arrest (as a striking instrument, or electronically to gain tactical advantage and increase the probability of causing death or serious physical injury), this has

[57] Agency report 23-4997, narrative page 2

[58] https://supreme.justia.com/cases/federal/us/490/386/

provided adequate cause and basis for the justified use of deadly force on numerous occasions nationwide. Accordingly, the totality of these circumstances would have caused a prudent, experienced, and professionally trained police officer to reasonably believe that Mr. O'Hara was an immediate threat to officers.

- **The suspect actively resisting seizure**: Mr. O'Hara was actively resisting seizure and doing so while attempting to disarm and after having disarmed a police officer.
- **Rapidly evolving circumstances**: The totality of circumstances presented in this case were tense, uncertain, and rapidly evolving.

In consideration of the totality of circumstances and information provided above, a prudent, experienced, and professionally trained police officer facing these or similar circumstances would have believed that the key factors in *Graham v. Connor*[59] had been met, and that he/she was justified to use the soft empty hand, grappling techniques, TASER, and kicks/strikes as described and acknowledged in self-defense, defense of others, to overcome resistance to control, to prevent disarming and to recover a lost weapons, and to effect an arrest.

**Opinion 3:**

The use of force in this case was not reflective of an unlawful battery.

**Basis for Opinion 3:**

Please see the above opinions and information, which outlines the justification for the force based on adequate cause and provocation, and the totality of circumstances that would have caused prudent, experienced, and professionally trained police officers to reasonably believe that the force used in this case was justified in defense of self and others, to prevent being disarmed of a police duty weapon, to regain control of a police duty weapon, and to effect an arrest. Accordingly, the use of force would be justified and not reflective of an unlawful battery.

**Opinion 4:**

Officer Butler-Cherry acted appropriately and in a manner that was consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances, as it relates to "failing to intervene" in the force applied by Sgt. Lot against Mr. O'Hara.

**Basis for Opinion 4:**

Please see opinion two and the related basis information above. The force addressed in that opinion was consistent with generally and commonly accepted police training, policy, and practice, and consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances. A police officer "has a duty to intervene to prevent or stop the use of excessive force by

[59] https://supreme.justia.com/cases/federal/us/490/386/

another officer when it is safe and reasonable to do so."[60] The key consideration in a duty to intervene scenario is that the force in question be excessive-which as outlined in opinion two-was not. Accordingly, there was no duty to intervene in the application of appropriate force, and Officer Butler-Cherry acted appropriately in response to that allegation.

I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions in this case.



Steve Ijames

[60] www.theiacp.org/sites/default/files/2020-07/National_Consensus_Policy_On_Use_Of_Force, A, General Provisions, 4, page 3

**Attachment A-Material Reviewed:**

- Complaint
- Body worn camera video of Sgt. Lott and Officer Butler-Cherry
- Dash Camera video from Sgt. Lott and Officer Butler-Cherry
- Blueberry Hill Surveillance video

- 3.15.2023 Taser Report UCity 0086-0092
- 5.29.2023 Incident Report_Redacted UCity 0093-0099
- 23-2806 Occurrence Report #2_Redacted UCity 0100-0130
- 23-2806 Occurrence Report UCity 0131-0132
- 23-4977 Occurrence Report UCity 0133-0137
- Butler Cherry-Training Record UCity 0372-0378
- Detailed Occurrence Report 23-2806 UCity 0138-0157
- Detailed Occurrence Report 23-4977_Redacted UCity 0158-0224
- Lott Taser Training UCity 0225-0231
- Lott Training File_Redacted UCity 0232-0364
- Lott-Training Record UCity 0365-0368
- Other UCity Incidents_Redacted UCity 0369-0377
- Report 23-4977_Redacted UCity 0378-0444
- Sgt. Lott Taser Log and Training UCity 0445-0451
- Taser Powerpoint UCity 0452-0626
- Text Screenshot 1 UCity 0627
- Text Screenshot 2 UCity 0628
- U City Policies UCity 0629-0703

## RULE 26 (B) DISCLOSURES-Steve Ijames

I have authored the following publications:

1. "Training and Tactics for Resolving the Covered Pile", The Tactical Edge Magazine, Vol. 10, No. 2, Spring, 1992
2. "Crosshairs-The Tactical Edge Zeros in on the Springfield Missouri Police Crisis Action Team", The Tactical Edge Magazine, Vol. 10, No. 2, Spring, 1992
3. "Preparing for the Big Bang", The Tactical Edge Magazine, Vol. 11, No. 1, Winter 1993
4. "The Cat House: Creating the Terry L. Knowles Live-Fire Training Facility", The Tactical Edge Magazine, Vol. 11, No. 3, Summer 1993
5. "Less Lethal Force: Concepts and Considerations in the De-escalation Philosophy", The Tactical Edge Magazine, Vol. 13, No. 3, Summer 1995
6. "Less Lethal Projectiles: Seeking a Balance", The Tactical Edge Magazine, Vol. 14, No. 4, Fall 1996
7. "Testing and Evaluating Less Lethal Projectiles", The Tactical Edge Magazine, Vol. 15, No. 2, Spring 1997
8. “Critical Incident Problem Solving: The Pre-incident Planning Model”, The Police Chief Magazine”, Vol. LXIV, No. 3, March 1997
9. “Testing and Evaluating Less Lethal Projectiles-Part 2”, The Tactical Edge Magazine, Vol. 15, No. 3, Fall 1997
10. “Less Lethal Force Options: Tactics, Training and Technology for Unconventional Encounters”, The Police Chief Magazine”, Vol. LXV, No. 3, March 1998
11. “Critical Incident Problem Solving: removing surprise and indecision from the tactical operations vocabulary”, The Tactical Edge Magazine, Vol. 16, No. 2, Spring 1998
12. “Chemical Agents-Barricade Resolution Through Space Deprivation”, The Tactical Edge Magazine, Vol. 16, No. 4, Fall 1998
13. “Less Lethal Force Options”, Law and Order Magazine, Vol. 46, No. 12, December, 1998
14. "Less Lethal-Emerging Trends in a Hot Environment", The Tactical Edge Magazine, Vol. 17, No. 1, Winter 1999
15. “Less Lethal Trends-Revisiting a Canadian Incident”, The Tactical Edge, Vol. 18, No. 2, Spring 1999
16. “Force Options and Legal Challenges”, The Tactical Edge, Vol. 18, No. 3, Summer 1999
17. “Engagements-Tactics and Training for the Unconventional Encounter”, The Law Enforcement Trainer, Vol. 14, No. 6, November/December 1999
18. “Less Lethal Impact-when is enough enough”, The Tactical Edge, Vol. 18, No. 2, Spring, 2000
19. “Less Lethal Projectile Tests and Modifications”, The Tactical Edge, Vol. 18, No. 3, Summer, 2000
20. “Trends and Tactics in Use of Force Options”, The Tactical Edge, Vol. 18, No. 4, Winter, 2000
21. Co-author, Penn State Applied Research Laboratory, Human Effects Advisory

Panel, "Crowd Behavior, Crowd Control, and the Use of Non-Lethal Weapons", January 1, 2001, fulfilling USMC contract #M67004-99-D-0037-0001

22. "Impact in the Field", Police Magazine, July, 2001
23. "Hand Held Lightning", Police Magazine, September, 2001
24. "Zeroing in on Accuracy: Managing the Potential for Impact Projectile Deaths and Serious Injuries", Police and Security News, November, 2001
25. "Noise/Flash Diversionary Devices: Deployment Considerations and the Prevention of NFDD Related Injuries", Police and Security News, November, 2001
26. “Creating a Less Lethal-Impact Projectile Program: Ground Floor Thoughts on Top Floor Performance”, Police and Security News, January-February, 2002.
27. “Logic, Layout, and Longevity: Jumping Into the Live Fire Training House Environment”, Police and Security News, May, 2002
28. “Impact Projectiles: Ten Things a Chief Needs to Know”, Law and Order Magazine, September, 2002
29. “Chemical Munitions Deployment-Zeroing in on Space Deprivation”, Police and Security News, October, 2002
30. “Forcible Entry Equipment and Techniques”, Police and Security News, November/December, 2002
31. “Chemical Munitions Deployment, Thoughts and Considerations for Use in Public Disorder”, Police and Security News, January/February, 2003
32. “Patterns of Injury, Recognition, and Treatment for Less Lethal Law Enforcement Techniques”. Emergency Medicine, November 2003
33. “Contingency Planning: Step One Towards Positive Performance at the Crisis Site”, Police and Security News, November/December, 2003
34. “NTOA Less Lethal Data Base”, The Tactical Edge, Volume 21, Num. 4, Fall 2003
35. “Impact Projectiles: Lessons Learned Thus Far”, The Tactical Edge, Volume 21, Num. 4, Fall 2003
36. “Noise Flash Diversionary Devices-Positive Steps in Preventing Negative Outcomes”, Tactical Response Magazine, Volume 4, #1, Winter, 2003.
37. “Best of the Best-Covered Pile Hostage Rescue Re-visited”, The Tactical Edge, Volume 22, Num. 1, Spring 2004
38. “Tactics, Tools and Technology for the Unconventional Police Encounter”, Encyclopedia of Law Enforcement, John Jay College of Criminal Justice, June 2004
39. “Less Lethal Update Part 1-Cutting Edge Technology for the Unconventional Encounter”, Police and Security News, March/April, 2004
40. “Less Lethal Update Part 2-Cutting Edge Technology for the Unconventional Encounter”, Police and Security News, June/July, 2004
41. “Noise Flash Diversionary Devices-Risk and Benefit”, Tactical Response Magazine, August, 2004
42. “Taser Technology: Use, Abuse, and the EMD Paradox Facing Law Enforcement Today-Part 1”, Police and Security News, August/September 2004
43. “Taser Technology: Use, Abuse, and the EMD Paradox Facing Law Enforcement Today-Part 2”, Police and Security News, October/November 2004

44. "Integrated Weapons Platforms", The Tactical Edge Magazine, Winter 2005
45. "Tips On Tactical Leadership", Tactical Response Magazine, March, 2005
46. "Tactical Focus-Zeroing in on Safe and Effective NFDD Use", the Journal of the Illinois State Tactical Officers Association (ITOA), Spring, 2005.
47. "Break and Rake Basics", Tactical Response Magazine, April, 2005.
48. "Contemporary Taser Use and Consideration", Policeone.com Internet Magazine, May , 2005.
49. "Extended Range Impact Devices-What We Know", Policeone.com Internet Magazine, June, 2005.
50. "Little Bang Theory-Mechanical Processes that Enhance Safe and Effective NFDD Use", Policeone.com Internet Magazine, July, 2005.
51. "Managing Officer Created Jeopardy", Policeone.com, Internet Magazine, July 15, 2005.
52. "In Defense of the 12 Gauge Bean Bag Round", Policeone.com, Internet Magazine, August 15, 2005.
53. "I Have Seen THE LIGHT: Integrating Less Lethal Concepts with High Tech Illumination Devices", Policeone.com, Internet Magazine, September 15, 2005.
54. "Flash Bang 101", Policeone.com, Internet Magazine, October 15, 2005.
55. "Personal Chemical Munitions-Are They Gone With the Electronic Wind?", Policeone.com, Internet Magazine, November 15, 2005.
56. "Integrated Force Weapons Platforms", The Tactical Edge Magazine, Winter, 2005
57. "Impact Prose: Deep Thoughts on a Striking Subject", Policeone.com, Internet Magazine, December 15, 2005.
58. "Size Matters", Large Caliber Impact Leaves its Mark in the Field, Policeone.com, Internet Magazine, January 15, 2006.
59. "When is Enough-Enough? Reconciling the Coercion/Custody Dilemma", Policeone.com. Internet Magazine, February 15, 2006.
60. "Impact Projectiles: Shot Placement, and the role it plays in Death and Injury Prevention", Policeone.com, Internet magazine, March 15, 2006.
61. "Fundamental Tactical Concepts: The Breach and Delay", Tactical Response Magazine, April, 2006.
62. "Impact Projectile Training: Critical Issues for Positive Performance", Policeone.com, Internet Magazine, April 15, 2006.
63. "The Three Weapon Dilemma: The FNP90 and Thoughts on Bridging the MP/M4 Gap", Police and Security News May, 2006.
64. "Distraction-Diversion", Law Officer Magazine, October, 2006
65. "SWAT Team Excellence", Law Officer Magazine, February, 2007.
66. "I have Seen THE LIGHT Part 2: Additional Integration of Less Lethal Force Options and Illumination Tools", Policeone.com, Internet Magazine, March 15, 2007.
67. "Less Lethal Weaponry and Less-lethal Force Decision Making", Police Executive Research Forum-Critical Issues In Policing Series: Strategies for Resolving Conflict and Minimizing use of Force, April 2007.
68. "Pepper Spray: Is the Hot Stuff Still Relevant in the High Tech Electronic World"?, Police and Security News, Volume 23, issue 3, May/June 2007

69. “Trainers, Impact Round Training, and the Critical Issue of Point of Aiming/Point of Impact”, Policeone.com, Internet Magazine, May 15, 2007.
70. “The Less Lethal Philosophy and Barricades Involving the Mentally Ill”, Policeone.com, Internet Magazine, July 15, 2007.
71. “Less Lethal Force Options”, a chapter in the Police Executive Research Forum (PERF) publication, “Chief Issues”, Spring, 2007
72. “Less Lethal State of the Art”, Tactical Response Magazine, November 2007.
73. “Tactical Intervention with the Mentally Ill-The Barricaded Subject”, The Tactical Edge Magazine, Fall, 2007
74. “Building a Better Mouse Trap: The J & N Tactical Bang Stick”, Policeone.com, Internet Magazine, October 15, 2007.
75. “Tragedy in Boston: The Impact Projectile Death of Victoria Snelgrove”, Policeone.com, Internet Magazine, December 15, 2007.
76. “PUBLIC ORDER MANAGEMENT 101: Chemical Munitions”, Policeone.com, Internet Magazine, January 15, 2008.
77. “The Wallbanger”, Policeone.com, Internet Magazine, March, 2008.
78. “Less Lethal Technology”, Tactical Response magazine, vol. 6, no. 3, May 2008.
79. ““Less Lethal Technology”, Law and Order Magazine, vol. 56, no. 12, December 2008.
80. “Patterns of Injury, Recognition, and Treatment for Less Lethal Law Enforcement Techniques”, Georgia Medical School Journal, Spring 2009.
81. “TASER Do’s and Don’ts”, Tactical Response Magazine, May-June 2009
82. Halton Police Tactical Barricade Incident De-brief-Policeone.com, Internet Magazine, July 2009.
83. "Hurting Ourselves and Our Training"-Focusing on Risk/Benefit Analysis and the ways in which we train can help police trainers more safely replicate circumstances officers are likely to face on the street, Policeone.com, Internet Magazine, February 2011.
84. "Safety Considerations for Flash Bangs", Policeone.com, Internet magazine, March 2011.
85. "Taking the Straw Man to the Ground: Arguments in Support of the Linear Use-of Force-Continuum", Police Chief Magazine, Volume LXXVIII, number 12, December, 2011.
86. "Update on Safe and Effective NFDD Use", KCMTOA Tactical Journal, May, 2013
87. “Tactical Teams-Pitfalls, Perils, and Positive Performance”, The Tactical Edge, Vol. 36, NO. 3, Summer 2018

**I am disclosing the following list of cases in which I have testified as an expert at trial or deposition in the past four years:**

1. Haegele v. Judd, Case No. 8:19-cv-02750-VMC-CPT, UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, deposition, September, 2020
2. ANTHONY DE'SEAN WARREN JR., et. al., vs. WAFFLE HOUSE, INC., et al., Case No.: 18BA-CV00099, IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI. Deposition, October, 2020
3. MARK ARNOLD, Plaintiff, vs. CITY OF OLATHE, KANSAS, et al, Defendants. Case No.: 2:18-CV-02703, deposition, December, 2020
4. RE: Patricia Lopez as Personal Representative for the ESTATE OF ANTHONY LOPEZ; and PATRICIA LOPEZ and CAESAR LOPEZ, surviving parents of ANTHONY LOPEZ, deceased, vs. CITY OF MESA; HEATH CARROLL; and DOES 1-10, inclusive, deposition, February, 2021
5. Daniel Barerra v. City of Woodland, UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA, CASE NO.: 2:18-cv-00329-JAM-KJN, deposition, September, 2021
6. In the Circuit Court of Jackson County, Missouri, STATE OF MISSOURI, vs. ERIC J. DEVALKENAERE, Case no. 2016-CR02823, Deposition, October, 2021
7. As above, trial, November 2021
8. 27-CR-21-7460: State vs. Kimberly Potter, Minneapolis, MN. Trial. December, 2021
9. United States of America vs. J. Alexander Kueng, United States District Court of Minnesota, Minneapolis, MN. Trial. February 2022.
10. State of Arkansas v. Michael Davis, 43CR-21-489, trial, March, 2022.
11. Aumick v. City of Ava, et al., deposition, July, 2022
12. Lionel Womach vs. Jeremy Rodriquez Kansas US District Court, deposition, September, 2022
13. In the Circuit Court of Jackson County, Missouri, at Independence, Randi McGaugh, et al., Plaintiffs, vs Tyler Naudet, et al., Defendants., No. 2016-CV149025, deposition, September 2022
14. Department of Public Safety v. Timothy J. Eilers, Administrative Hearing Commission, deposition, October 2022
15. IN THE DISTRICT COURT OF BARBER COUNTY, KANSAS, STATE OF KANSAS, vs. VIRGIL "DUSTY" BREWER, Case No. 2018-CR-000070, November 2022, trial
16. State of Colorado vs. Officer Mark Jones, Jefferson County Court, November 2022, trial
17. THE ESTATE OF JOSHUA ADAM FUSON, by administratrixes, AMY HICKMAN & DAFFENY SNEED FUSON, et al Plaintiffs VS CITY OF PADUCAH, KY, TONYA RAY, SOUTHERN HEALTH PARTNERS, INC., et al Defendants. Deposition, December 2022
18. State of Vermont vs. Officer Mark Schwartz. Criminal Trial. St. Albans, VT. January, 2023

19. IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO, Civil Action No. 21-CV-02502-RM-NRN, WENDY LOVE AND JAY HAMM, Plaintiffs V. OFFICER MATHEW GRASHORN, IN HIS INDIVIDUAL CAPACITY, Defendant, deposition, February, 2023
20. *Gabrielle Bynum v. County of Los Angeles, et al.* USDC Case No. 2:21-cv-04453-JPR, Deposition, May, 2023
21. JEREMY MATTSON, Plaintiff, v. ARON STREIBEL, DANIEL VOGT, CITY OF CALDWELL, AND JOHN DOES 1-15, deposition, June, 2023
22. State of Colorado vs. Jordan Steinke, trial, July 2023
23. Kim Diane Handy Jones, as Trustee for the next of kin of Cordale Handy v. City of Saint Paul, et al. , trial, July 2023
24. Department of Public Safety v. Timothy J. Eilers, Administrative Hearing, August, 2023
25. IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION JOSHUA SMOLA, CASE NO.: 8:22-CV-2383-SDM-ISS, Plaintiff, vs. CHAD CHRONISTER and JACK THOMPSON, Defendants. Deposition. September, 2023
26. ANNA CHRISTINE LEWIS and BRADLEY LEWIS, as Personal Representative of the Estate of Bradley Alexander Lewis, ANNA CHRISTINE LEWIS, BRADLEY LEWIS, HELENSTRICKLEN, RALPH RUST STRICKLEN, JERLENE JONES, and GEORGE PRESTON LEWIS Plaintiffs, vs. Case No.: CV-21-00557-TUC-RM CHRIS NANOS, individually and in his capacity as Sheriff of Pima County, Arizona; PIMA COUNTY SHERIFF DEPUTY GILBERT CAUDILLO, individually and in his official capacity as an employee of the County of Pima, Arizona, and his official capacity as Sheriff Deputy of the Pima County Sheriff's Department; and PIMA COUNTY SHERIFF DEPUTY MICHAEL MOSELEY, individually and in his official capacity as Sheriff Deputy of the Pima County Sheriff's Office and PIMA COUNTY, Defendants. Deposition. December, 2023
27. Windish v. Mesa, City of et al., US District Court for the District of Arizona, Trial, February, 2024.
28. Re: Estate of Richard Lee Richards by Special Administrator Victoria Richards, Plaintiff, v. Ryan T. Remington and the City of Tucson, Defendants. Deposition, May, 2024.
29. In the Circuit Court of Jackson County, Missouri, at Independence, Randi McGaugh, et al., Plaintiffs, vs Tyler Naudet, et al., Defendants., No. 2016-CV149025, trial, May, 2024.
30. Re: Case 4:23-cv-00313-DGK Strickland v. Kansas City, Missouri Board of Police Commissioners et al. Deposition, June, 2024
31. RE: Sebastian Wells v. Christian County, Mo et al., deposition, June, 2024.
32. RE: MARVETTE ATKINS, Administrator and Personal Representative for the ESTATE OF DANIEL NEWTON NEAL, Plaintiff, v. J.G. BENNETT, individually, R.A. BIAS, individually, M. GIBSON, individually, M. SOWELL, individually, and T.K. WATERS, SHERIFF, CITY OF JACKSONVILLE FLORIDA, in his official capacity, Defendants. Deposition. July, 2024.

# Steve Ijames
## Police Practices and Training Consultant
## Fee Schedule

- I charge $325.00 per hour for civil case review, preparation, and consultation. I do not charge a fee for case work that is criminal in nature. I do not accept any civil case after having initially consulted on the criminal side.

- Time spent in trial, conducting site visits, or working outside of Springfield, Missouri will be billed at a flat rate of $2950.00 per calendar day plus actual coach expenses. Time spent on travel will be billed at a daily rate, with partial days being prorated based on the amount of the travel day expended.

- I charge a per day flat fee of $2950 for depositions. Depositions requiring travel outside of Springfield, Missouri are billed at $2950.00 per calendar day including travel days, plus actual coach expenses. Deposition fee and any related travel expenses must be paid five days in advance of travel.

- Absent a contract stating otherwise, I will submit a statement immediately following the accrual of actual expenses, and periodically during the discovery and disclosure process. The retaining firm is responsible for notifying me in the event the case is resolved, to ensure the timely submission of a final statement.

I generally do not require a retainer, but do ask that the retaining firm cause all statements to be reconciled within 30 days of submission. If that is not acceptable, a retainer of $5,000 is requested at the time the case file is provided for review.

# Steve Ijames

## EDUCATION

- Bachelor of Science degree in Criminal Justice Administration, Drury University, Springfield, Missouri
- Master of Science Degree in Public Administration, City University, Bellevue, Washington
- Graduate, Missouri State Highway Patrol Law Enforcement Academy
- Graduate, Missouri State Highway Patrol undercover narcotics investigator training program.
- Graduate, Drug Enforcement Administration (DEA) undercover narcotics investigator training program.
- Graduate, Mid States Organized Crime Information Center (MOCIC) narcotic investigators Criminal Intelligence Techniques training program.
- Graduate, Springfield, Missouri Police Department Academy
- Graduate, 186th FBI National Academy

## LAW ENFORCEMENT/PROFESSIONAL EXPERIENCE

**Poplar Bluff, Missouri Police Department**

- April 1979 through February 1981-Patrol Officer
- February 1981 through August 1982-Narcotics Detective

**Springfield, Missouri Police Department**

- August 1982-1000 hour Springfield Police academy training
- January 1983-uniformed patrol officer
- September 1985-undercover narcotics investigator and Federal Drug Task Force member-Commissioned Deputy Untied States Marshal
- October 1987-uniformed patrol
- July 1988-Detective-criminal investigations and undercover narcotics investigations
- September 1989-Sergeant-criminal investigations
- April 1990-Crisis Action Team leader/sergeant (SWAT)
- December 1992-Lieutenant, Special Operations Commander-overseeing all SWAT and narcotics investigations (internal and Federal task force related)
- October 1995-Captain, Uniformed Operations Division-All patrol command, supervision, and operations
- July 1998-Major, Operations Division Commander
- June 2001-Major, Investigations Division Commander-overseeing all criminal investigations (homicide, officer involved shootings, persons and property) including undercover and overt narcotics investigations and Federal task force related
- June 2007-retired from the Springfield Police Department

**Greene County Sheriff's Department, Springfield, Missouri**

- 1984 to present-providing policy development/consultation, and basic and advanced training and consultation to the Special Weapons and Tactics Team.

**United States Marshals Service**

- 1985 to 1987-Commissioned Deputy US Marshal, Federal Drug Task Force

**Republic, Missouri Police Department**

- January 2015 to June 2015-Interim Chief of Police, DEA task force member

**Ozark, Missouri Police Department**

- July 2015 to October 2015-Interim Chief of Police, DEA task force member

**Missouri State Park Rangers**

- April 2019 to September 2021-Park ranger providing agency training and uniformed patrol services

**Indian Point, Missouri Police Department**

- July 2022 to present-providing uniformed patrol services

## INSTRUCTOR/TRAINER RATINGS

- United States Department of State, Diplomatic Security Service, Office Of Anti-Terrorism Assistance, Course Developer and lead instructor-Anti Terrorism Less Lethal Engagement Strategies Instructor/trainer program (Impact Projectile, Chemical Munitions, and Noise/flash diversionary devices)
- International Association of Chiefs of Police (IACP): Course developer and lead instructor-Noise Flash Diversionary Devices, Chemical Munitions, Impact Projectiles-Instructor/Trainer program
- National Tactical Officers Association (NTOA): Course developer and lead instructor-Noise Flash Diversionary Device, Chemical Munitions, Impact Projectiles-Instructor Trainer program
- Defense Technology: Noise/Flash Diversionary Device, Chemical Munitions, Aerosol Chemical Munitions, Impact Projectiles-Instructor/Trainer
- California Association of Tactical Officers (CATO), Noise/Flash Diversionary Device instructor/trainer course developer-instructor/trainer
- TASER International Advanced TASER-Master Instructor/Trainer
- International Association of Chiefs of Police (IACP): Course developer and lead instructor-Electronic Control Weapon (TASER)-Instructor/Trainer
- Strategos International: Course developer and lead instructor, Electronic Control Weapon Instructor/Trainer
- Strategos International: Noise/Flash Diversionary Device, Chemical Munitions, Aerosol Chemical Munitions, Impact Projectiles-Instructor/Trainer

## INSTRUCTOR RATINGS-CERTIFICATIONS

- PR24 Instructor
- ASP baton instructor
- Missouri Department of Public Safety-Generalist and Specialist Instructor
- Los Angeles Sheriff's Department-Noise/Flash Diversionary Device Instructor
- Missouri State Highway Patrol-Firearms Instructor
- Heckler and Koch International/MP-5 Submachine Gun Instructor
- Oklahoma Miner Training Institute-Certified Explosives Surface Blaster
- TEES (Tactical Explosive Entry School) explosive breacher
- Heckler and Koch and Glock Weapons System Armorer
- Crisis Intervention Team (CIT) Training Program-Memphis Model-Instructor in the basic and advanced training programs
- Bolowrap, subject restraint device

## INTERNATIONAL TRAINING/PROFESSIONAL EXPERIENCE

- **Appointed:**
  National Tactical Officers Association (NTOA), original board of directors' member. 1994
- **Instructor:**
  United States Department of Justice ICITAP Program, creating and implementing the Somali National Police Convoy/Escort training program, **Mogadishu, Somalia**, June 1994.
- **Instructor:**
  United States Department of Justice ICITAP Program. Advance team member assisting in the planning and implementation of the Haitian National Police training program, **Port Au Prince, Haiti,** September, 1994.
- **Instructor:**
  United States Department of Justice ICITAP Program. Instructor Coordinator, directing the training activities and logistical support for the 24-member international instructor cadre, providing the interim Haitian Police training program, **Port Au Prince, Haiti,** October/November, 1994.
- **Appointed:**
  National Tactical Officers Association (NTOA), original section chair, less lethal force options. 1996
- **Lead Instructor:**
  National Tactical Officers Association 1996 European Less Lethal Training Program (impact projectiles, chemical agents, noise/flash diversionary devices) presenting to SWAT officers from **London, Amsterdam, Brussels, Düsseldorf and Nuremberg,** March 1996.
- **Lead Instructor:**
  National Tactical Officers Association 1997 European Less Lethal Force Conference, **Amsterdam and Belfast, Northern Ireland.** Providing less

lethal training (impact projectiles, chemical agents, noise/flash diversionary devices) for officers from 17 European countries.

- **Instructor:**
  United States Department of Justice ICITAP Program. Lead instructor, tactical command and less lethal force options training, Civil Disorder Management Course for Federation Police Commanders, **Sarajevo, Bosnia-Herzegovina**, June, 1998.
- **Evaluator:**
  Commissioned by the United States Department of Justice ICITAP Program, to conduct an in-depth site evaluation of the Haitian National Police Public Disorder Unit (CIMO). The evaluation addressed organization and structure, training, equipment, tactics, and recommendations for future US Government assistance-Port **Au Prince, Haiti**, July, 1998.
- **Assessor:**
  Commissioned by the United States Department of Justice ICITAP Program, to conduct an onsite review and assessment of the Salvadoran National Police Special Weapons and Tactics Program, **San Salvador, El Salvador**, November, 1998.
- **Evaluator:**
  Commissioned by the United States Department of Justice ICITAP Program, to conduct an on-sight evaluation and performance critique of the Public Order Unit of the National Police Force of Ghana, **Accra, Ghana-West Africa**, July 1999.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Public Order Supervision and Management Training Program, provided for the command element of the Haitian National Police CIMO Unit, **Port Au Prince, Haiti,** June, 1999.
- **Featured Presenter:**
  Impact Projectile Use and Deployment, Janes International Less Lethal Weapons Conference, **London, England**, November 2/3, 1999
- **Evaluator:**
  Commissioned by the Police Executive Research Forum (PERF) as a Use of Force/Officer Involved Shooting/Homicide Suppression subject matter expert, for an on site evaluation of the Jamaican Constabulary Force (JCF). **Kingston and Ocho Rios, Jamaica,** October, 2000.
- **Featured Presenter:**
  Impact Projectile Injuries, Janes International Less Lethal Weapons Conference, **Edinburgh, Scotland**, December 12-16, 2000
- **Evaluator:**
  International Association of Chiefs of Police observer/evaluator, addressing the public order management of 35,000 protestors at the Summit of the Americas. **Quebec City, Canada,** May 1-3, 2001.

- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Civil Disorder Supervision and Management Training Program, provided for the Timorese National Police, **Dilli, East Timor-SE Asia**, March, 2002.
- **Evaluator:**
  International Association of Chiefs of Police observer/evaluator, addressing the public order management process of the G8 Summit, **Ottawa, Canada,** June 25/27-2002.
- **Keynote Address:**
  Safe and Effective Impact Round Use, Janes International Less Lethal Weapons Conference, **Manchester, England**, September 2002.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Civil Disorder Command, Supervision, and Management Training Program, provided for the Tanzanian National Police, **Dar es Elam, and Zanzibar-Tanzania,** November/December, 2002.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Civil Disorder Line Officer Training Program, provided for the Tanzanian National Police, **Moshi-Arusha, Tanzania**, March/April, 2003
- **Featured Presenter:**
  Impact Technology Advancements, Janes International Less Lethal Weapons Conference, **Glasgow, Scotland**, October 1-4, 2003
- **Team Leader:**
  Coordinated the curriculum and directed the activities of four instructors providing the Police Executive Research Forum (PERF) "Safe Encounters" (less lethal force options/homicide reduction) program for select officers from the Grants Pen District, Jamaican Constabulary Force (JCF). **Kingston, Jamaica**, November 2-14, 2003.
- **United States Delegate/Featured Presenter:**
  4th annual International Law Enforcement Technology Forum, sponsored by the Police Scientific Development Branch (PSDB) of the United Kingdom Home Office, addressing impact projectiles and TASER technology, **Gatwick and London**, February 1-5, 2004.
- **Consultant:**
  Counter-terror and dignitary protection advance team member-assessing site, driver, and venue security for the International Olympic Games, **Athens, Greece**, June, 2004
- **Assistant Team Leader:**
  Thirty-day Counter-terror and dignitary protection detail on behalf of the Government of the United Kingdom, the International Olympic Games, **Athens/Marathon/Glyfada, Greece**, August, 2004
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Civil Disorder Command, Supervision, and Management Training

Program, provided for the National Police of Yemen, **Sana'a, Yemen**, March, 2005

- **United States Delegate/Featured Presenter:**
  5th annual International Law Enforcement Technology Forum, sponsored by the Royal Canadian Mounted Police, addressing impact projectile injury potential and TASER misuse, **Ottawa, Canada,** June 20-23, 2005.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Civil Disorder Line/Operator Training Program, provided for the National Police of Yemen, **Sana'a, Yemen**, July, 2005.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the combined Command/Line Operator Civil Disorder Training Program, provided for the Ugandan National Police, **Kampala, Uganda**, May/June, 2006.
- **Lead Instructor:**
  United States Department of Justice ICITAP Program, Lead Instructor for the Command/Line Public Order Management training program, provided for the Tanzanian National Police, **Dar es Elam, Tanzania.** June 19-23, 2006.
- **Featured Presenter:**
  Impact Projectile Fatalities, Janes 9th Annual International Less Lethal Force Conference, **Leeds, England**, October 25-26, 2006
- **Consultant:**
  Commissioned by the Inspector General of the Garda Síochána Inspectorate, to conduct a review and inquiry into the circumstances surrounding the fatal shooting (lethal and less lethal projectiles) of John Carthy at Abbey Lara, CO. Longford, **Republic of Ireland**, October 27-28, 2006
- **Featured Presenter:**
  TASER-The American Experience, Association of Chief Police Officers (ACPO) annual conference, **Stratford on Avon, England,** September 24, 2007
- **Advance Team Leader:**
  United States Department of Justice ICITAP Program, lead advance in preparation of a senior command, "train the trainer", and line block of civil disorder management training for 4,100 officers, provided for the Pakistani National Police, **Karachi, Islamabad, and Punjab Police College at Sihala, Pakistan**, March 28-April 4, 2008.
- **Team Leader:**
  United States Department of Justice ICITAP Program, directing a "train the trainer" and line block of civil disorder management training for 4,100 officers, provided for the Pakistani National Police at the National Police college, **Islamabad, Pakistan**, May-June 2008.

- **Lead Advance Security Coordinator:**
  Site, personnel, and physical asset protection for an International Non-Governmental Aid Organization (NGO), in support of the immediate food and medical relief following the earthquake in Haiti. **Port Au Prince**, January, 2010.
- **Course Developer-Lead Instructor:**
  U.S. Department of State, Anti-Terror Assistance (ATA) Program, Two week Instructor Training for the Indonesian National Police Anti-Terror Unit (Detachment 88) addressing barricaded subject resolution, chemical agents, impact projectiles, and noise flash diversionary devices. **Jakarta and Sumarang, Indonesia**, November, 2011
- **Course Developer:**
  U.S. Department of State, Anti-Terror Assistance (ATA) Program, Indonesian National Police Anti-Terror Unit (Detachment 88) Commander training addressing barricaded subject resolution, chemical agents, impact projectiles, and noise flash diversionary devices. **Jakarta Indonesia**, June, 2012
- **Lead Advance/Consultant:**
  Strategic and operational security assessment on behalf of Convoy of Hope, **Haiti and the Dominican Republic**, June 2013
- **Keynote address:**
  United Kingdom Armed Police Officers National Training Conference, "Contemporary Issues in the Police Application of Force", **Manchester, England.** January 2014
- **Lead Advance/Consultant:**
  Strategic and operational security assessment on behalf of Convoy of Hope-**Kenya, Tanzania, and Ethiopia**. May 2014
- **Course Developer and Coordinator:**
  U.S. Department of State, Anti-Terror Assistance (ATA) Program, Indonesian National Police Anti-Terror Unit (Detachment 88), Instructor/trainer program addressing barricaded subject resolution, chemical agents, impact projectiles, and noise flash diversionary devices. **Jakarta Indonesia**, January, 2015
- **Course Developer and Coordinator:**
  U.S. Department of State, Anti-Terror Assistance (ATA) Program, Kenyan National Police, Instructor/trainer program addressing barricaded subject resolution, chemical agents, impact projectiles, and noise flash diversionary devices. Nairobi, Kenya, February, 2015
- **Course Developer and Coordinator:**
  U.S. Department of State, Anti-Terror Assistance (ATA) Program, Indonesian National Police Anti-Terror Unit (Detachment 88), Instructor/trainer program addressing barricaded subject resolution, chemical agents, impact projectiles, and noise flash diversionary devices. **Jakarta Indonesia**, April, 2015

- **Assessor/Subject Matter Expert:**
  Police use of force subject matter expert on behalf of the International Association of Chiefs of Police, conducting an assessment of the United States Virgin Island Police (consent decree). **St. Thomas, St. Croix, and St. John.** August 2018
- **Subject Matter Expert:**
  **City of Seattle**, Officer of the Inspector General, assessment and consultation related to police practices and public order management, July 2020.
- **Consultant:**
  Criminal case consultant to various States Attorneys and Attorneys General (most recent Kansas, Indiana, Illinois, Vermont), assessment/review of cases as it relates to police practices, and the potential criminal prosecution of police officers. Ongoing to the present time.
- **Subject Matter Expert:**
  Commissioned by the Missouri Attorney General to review police use of force cases, and offer expert opinions concerning the police practices in officer discipline/license cases. September, 2021.

## TRAINING/PROFESSIONAL EXPERIENCE

- **Lead Instructor/Program Developer:**
  IACP-Less Lethal Force Instructor/Trainer Program-addressing impact projectiles, chemical munitions, and noise/flash diversionary devices.
  IACP-Electronic Control Weapon Instructor/trainer
  Strategos International Electronic Control Weapon Instructor trainer
  IACP-Rapid Deployment to High Risk Situations.
  IACP-Contemporary Patrol Administration Program.
  NTOA-Less Lethal Force Instructor/Trainer Program-addressing impact projectiles, chemical munitions, and noise/flash diversionary devices.
- **Crisis Intervention Training (Memphis Model CIT)**
  Graduate-CIT Basic course (Kansas City Police Academy)
  Graduate-CIT advanced course (Kansas City Police Academy)
  Co-program coordinator-Springfield/Greene County Crisis Intervention Training program
- **Instructor:**
  IACP-SWAT Supervision and Management Program
  IACP-Advanced Critical Incident Management Program
- **Instructor:**
  California Association of Tactical Officers, SWAT Team Leader, Commander, and Supervisor training programs
- **Branch Davidian Compound-Police Observer:**
  FBI Hostage Rescue Team police observer (inner perimeter sniper position "Sierra One"), during the resolution efforts at the Branch Davidian Compound. Waco, Texas, March, 1993

- **Primary Instructor:**
  National Tactical Officers Association Annual Conferences in 1992, 1993, 1994, 1995, 1996, 1997, 1999, 2017, and 2019 teaching hostage rescue, less lethal force options, MP5 submachine gun and contemporary tactical command issues
- **Featured Instructor:**
  Law Enforcement Television Network (LETN), Less Lethal Force Options in High Risk Incidents, 1993 and 1996, and line officer training with impact projectiles.
- **Featured Presenter-**International Association of Chiefs of Police (IACP) Annual training Conferences
  1. 1995 (Miami), Less Lethal Force Options
  2. 1997 (Orlando), Barricades and the Mentally Ill
  3. 2000 (San Diego), Less Lethal Force Options
  4. 2005 (Miami), TASER use/Misuse
  5. 2006 (Boston) Addressing use of force, less lethal force options, TASER, and the de-escalation philosophy
  6. 2007 (New Orleans), offering three presentations-Force Less Than Deadly: What We Know, Barricades and the Mentally Ill, Beyond Rapid Deployment: A Real World Approach to Effectively Preparing for the Active Shooter
  7. 2009 (Denver), presentation to the agency legal section meeting on force models and resistance control
  8. 2011 (Chicago), Contemporary issues in police litigation and use of force
- **Featured Presenter:**
  International Association of Law Enforcement Firearms Instructors (IALEFI) International Conferences, 1996 and 1997, addressing use of force and less lethal force options.
- **Featured Presenter:**
  American Society of Law Enforcement Trainers (ASLET) National and International Conferences, 1998 and 1999, addressing use of force and less lethal force options.
- **Featured Presenter/Instructor:**
  The International SWAT Roundup Training and Competition, Orlando, Florida, 1997, 1998, 1999, 2001, addressing use of force and less lethal force options.
- **Assessor:**
  Appointed to the National Institute of Justice review panel for Less Lethal, counter terror and hostage rescue technology research grants-1998, 1999, 2004, 2005, and 2006, Washington, DC.
- **Featured Presenter/Instructor:**
  The Illinois Tactical Officers Association Annual Conference, addressing Impact Projectile Safety and use. October 1999, Oak Brook, IL. 1999.

- **Featured Presenter:**
  National Defense Industrial Association (NDIA) International Conference on Non-Lethal Munitions, addressing use of force and less lethal options, Washington, DC, March, 2000.
- **Presenter/panelist:**
  Penn State University Applied Research Laboratory, Human Effects Advisory Panel on Less Lethal Projectiles and Crowd Control, Orlando, Florida, September 2000.
- **Featured Presenter:**
  United States Army Less Lethal Weapons/Public Order Management Instructor/Trainer Program, Fort Leonard Wood, June 2002.
- **Consultant:**
  United States Army Less Lethal Weapons Policy/Procedure Development panel, addressing the creation of a new policy manual for US Army use of impact round technology in operations "Other Than War" (OTW), Fort Leonard Wood, July 2002.
- **Section Chair-Contemporary Operational and Technology Limits:**
  Penn State University Applied Research Laboratory, 2nd Annual International Conference on Minimal Force Options, State College, PA. October, 2002
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, TASER safety and use, October, 2002. Oak Brook, IL.
- **Keynote Address:**
  Non-lethal Technology and Academic Research Symposium, International Public Order Training-Impact Rounds, International Acceptability, and Lessons Learned in the Operational Realm, San Diego, Ca., November 2002.
- **Featured Presenter:**
  Barksdale Air Force Base, Critical Response Seminar, Addressing High Risk Incident Training and Preparation, Bossier City, La. December, 2002.
- **Consultant:**
  For the prosecution, Malvo-Muhammed "East Coast Sniper" case. July, 2003.
- **Featured Presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Impact Projectiles-Operational Use and Injury Reduction Strategies", Palm Springs, CA., September, 2003.
- **Featured Presenter:**
  Non-lethal Technology and Academic Research Symposium (NTAR 5), Impact Projectiles-Death and Serious Injury Factors and Preventive Strategies, Washington, DC. November 2003.
- **Featured Presenter:**
  FBI National Academy, "Less Lethal Force Options (Impact Rounds-TASER) Involving the Mentally Ill", Kansas City, Missouri, July 2004

- **Featured Presenter/Instructor:**
  The Illinois Tactical Officers Association Annual Conference, addressing Chemical agents and noise flash diversionary devices, November 2004, Oak Brook, IL.
- **Featured Presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues" presentation, Palm Springs, CA., September, 2004
- **Courseware Developer and on Camera Instructor:**
  Law Enforcement Television Network (LETN), Impact Projectiles, OC spray, M/X26 TASER, High Risk raid planning, Spring/Fall 2004. These programs were viewed by thousands of police officers throughout the United States via satellite.
- **Appointed:**
  Stern Commission, impaneled to investigate and report on the facts surrounding the Boston Police FN303 impact projectile death of Victoria Snelgrove, during a public order event following the Boston-New York baseball game leading to the World Series. Boston, November, 2004-March, 2005.
- **Panelist/presenter:**
  Police Executive Research Forum (PERF), International Use of Force Symposium, addressing use of force investigations and TASER technology. San Diego, CA., 12-2004
- **Presenter:**
  US Air Force Research Laboratory, Crowd Behavior and Modeling Simulation Workshop, addressing, "Public Order Management, Culture-Motive-Circumstance", San Antonio, Texas. January 26, 2005
- **Consultant:**
  Appointed as an outside expert to offer consultation and review of the Los Angeles Police Departments proposed Use of Force Sourcebook and Force Options Chart, Los Angeles, March, 2005
- **Appointed:**
  Advisory board, International Association of Chiefs of Police (IACP), for the creation of the NIJ funded, "emerging technology" executive brief on electro muscular disruption (TASER) devices, April, 2005.
- **Presenter-panelist:**
  U.S. Department of Justice, Less-Lethal Technology Symposium, addressing TASER devices and the use of force continuum, Washington, DC., April 4-5, 2005
- **Assessor:**
  Chosen to review and make recommendations concerning agency applications for the technology grants offered by the Department of Homeland Security, Commercial Equipment Direct Assistance Program. Arlington, VA., June, 2005

- **Consultant:**
  Topeka City Managers Independent Commission, Investigating the Topeka Police Department Narcotics and Command functions, following the indictment of two narcotics officers for corruption. October-December, 2005.
- **Featured instructor/presenter:**
  The National Summit on Police Use of Force, Institute for Law Enforcement Administration, the Center for American and International Law, addressing Best Practices in the Use of Less Lethal Weapons, Dallas, Texas, January 23-24, 2006.
- **Panelist:**
  United States Institute for Peace and U.S. State Department, Subject matter expert for the conference on a U.S. standing civilian police rapid deployment force for international conflict intervention operations, Washington, D.C. May 2006.
- **Presenter:**
  Crowd Behavior Modeling and Simulation Summit, Washington, D.C., 5-10/11-06.
- **Keynote Address:**
  U.S. Military Non-lethal Senior Leadership Symposium, Fort Leonard Wood, June 9, 2006.
- **Consultant:**
  Rand Corporation, Firearms Discharge Expert Panelist, Assessment group focusing on NYPD use of force and related investigations. New York City, May 18, 2007.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Barricades and the Mentally Ill, Noise Flash Diversion Devices, and Leadership at the Public Order Crisis Site, Anaheim, CA., September, 2007.
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, addressing hostage rescue and related tactical issues, November, 2007. Oak Brook, IL.
- **Program co-chair and featured presenter:**
  Institute for Law Enforcement Administration, 2008 Use of Force Conference, addressing the Ethical Use of Force-TASER Focus, and Force Modeling, Plano, Texas, October 2008
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Conference, "Legal Issues-Interacting with the Mentally Ill, Ontario, CA. October, 2008.
- **Panelist:**
  National Tactical Officers Association Delphi study group, creating best practices in the area of hostage resolution, September, 2009.
- **Featured Presenter:**
  FBI National Academy, "Best Practices in Training and Preparing Officers for Resistance Control", Wichita, Kansas. April 2010

- **Appointed:**
  International Association of Chiefs of Police, National Policy Center Board, July, 2010
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, Addressing Contemporary issues in resistance control, October, 2010. Oak Brook, IL.
- **Featured Presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Hostage Barricade Resolution Involving the Mentally Ill", Anaheim, CA, November, 2010
- **Program consultant and panelist:**
  The International Association of Chiefs of Police (IACP) and Community Oriented Policing (COPS Office) National Forum on Police Use of Force, Alexandria, VA. January and May, 2011.
- **Keynote speaker:**
  Illinois State Police Training Conference, in preparation for the 2012 NATO and G8 Conferences, addressing public order management and contemporary resistance control, Chicago, Illinois, March, 2012.
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, Addressing Contemporary Tactical issues in resistance control, October, 2012. Oak Brook, IL.
- **Appointed:**
  International Association of Chiefs of Police, National Patrol and Tactics Committee, January, 2013
- **Keynote speaker:**
  Indiana State Tactical Officers Annual Conference, addressing contemp-orary issues in tactical policing. Bloomington, Indiana, May, 2013.
- **Keynote speaker:**
  Ohio State Tactical Officers Annual Conference, addressing leadership issues related to critical incident management. Toledo, Ohio. May, 2013.
- **Featured presenter:**
  International Law Enforcement Forum on the use of less lethal force, addressing injuries related to impact projectiles and noise flash diversionary devices. Penn State University, Penn. May, 2013
- **Appointed:**
  Boston Marathon Post Blast Safety and Security Consultant, on behalf of the Massachusetts State Police and Boston Police Departments. Boston, Massachusetts, June, 2013
- **Featured Presenter:**
  FBI National Academy, "Chief Concerns-Laying the Proper Foundation for Police Litigation Defense", Mackinac Island Michigan, August 2013
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Barricades and the Mentally Ill", Anaheim, CA. October, 2013.

- **Featured presenter:**
  Wisconsin State SWAT Association annual conference, "Contemporary Tactical Issues", Madison, WI. March, 2014.
- **Keynote speaker:**
  Ohio State Tactical Officers Annual Conference, addressing Contemporary Issues in Tactical Policing. Dayton, Ohio. May, 2014.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", Reno, Nevada, October, 2014.
- **Keynote speaker:**
  Oregon State Sheriff's Conference, "Contemporary Issues in Police Management", Bend, Oregon. November 2014
- **Keynote speaker:**
  Utah State Chiefs Conference, "Contemporary Issues in Police Management", Salt Lake City, Utah. December 2014
- **Keynote speaker:**
  Oregon State SWAT Conference, "Contemporary Issues in Tactical Command, Bend, Oregon. April 2015
- **Keynote speaker:**
  Ohio State Tactical Officers Annual Conference, addressing Policing in a Post-Ferguson Era. Cedar Point, Ohio. May, 2015.
- **Keynote speaker:**
  Colorado State SWAT Association Annual Conference, addressing "Contemporary Issues in Tactical Policing". Loveland, Colorado. May, 2015.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", Anaheim, CA. October, 2015.
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, Addressing Contemporary Tactical Command Issues, October, 2015. Oak Brook, IL.
- **Featured Presenter:**
  FBI National Academy, "Contemporary Command Issues", Lake Tahoe, April, 2016
- **Keynote speaker:**
  Ohio State Tactical Officers Annual Conference, addressing Contemporary Police Command Issues, Cedar Point, Ohio. June, 2016.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", Reno, Nevada, October, 2016.
  - **Featured Presenter/Instructor:**
    The Illinois Tactical Officers Association Annual Conference, Addressing Contemporary Command Issues, October, 2016. Oak Brook, IL.
- **Featured presenter:**
  Wisconsin State SWAT Association annual conference, "Contemporary Command Issues", Milwaukee, WI. March, 2017.

- **Featured presenter:**
  Illinois Law Enforcement Alarm System (ILEAS) annual conference, "Contemporary Command Issues", Springfield, IL. March, 2017.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", San Diego, California, December , 2014.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", Reno, NV 2016.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", San Diego, California, December , 2017.
- **Featured presenter:**
  California Association of Tactical Officers (CATO) Annual Conference, "Contemporary Tactical Issues", San Diego, California, December, 2019.
- **Featured presenter:**
  Ohio State Tactical Officers Annual Conference, addressing Contemporary Tactical Issues, Cedar Point, Ohio. June, 2021.
- **Featured presenter:**
  National Tactical Officers Association (NTOA) Annual Conference, "Contemporary Tactical Issues", Kansas City, Mo., September, 2021.
- **Instructor:**
  Missouri State Police Chiefs Association Command College, Contemporary Issues in Use of Force and Liability, Jefferson City, Missouri, December, 2021.
- **Featured presenter:**
  Ohio State Tactical Officers Annual Conference, addressing Contemporary Tactical Issues, Cedar Point, Ohio. June, 2022.
- **Instructor:**
  Missouri State Police Chiefs Association Command College, Contemporary Issues in Use of Force and Liability, Jefferson City, Missouri, December, 2022.
- **Featured presenter:**
  FBI National Academy Associates (FBINAA) Annual training session, addressing police command and use of force issues, Fort Dawson, West Virginia, August, 2023.
- **Featured presenter:**
  FBI National Academy Associates (FBINAA) Annual training session, addressing police command and use of force issues, Lake of the Ozarks, Missouri, September, 2024.
  - **Featured Presenter:**
    The Illinois State Tactical Officers Association Annual Conference, addressing Contemporary Tactical Command and Operational Issues, November, 2023, Oak Brook, IL.

- **Instructor:**
  Missouri State Police Chiefs Association Command College, Contemporary Issues in Use of Force and Liability, Jefferson City, Missouri, December, 2023.
- **Featured presenter:**
  Illinois Law Enforcement Alarm System (ILEAS) annual conference, Contemporary Issues in Less Lethal Force, Champaign, IL. April, 2024.
- **Instructor:**
  Illinois Law Enforcement Alarm System (ILEAS) and Northern Illinois Police Alarm System (NIPAS) two day presentation addressing the Constitutional and Professional Policing of Public Events, on behalf of both organizations and guests (Chicago Police Department, Illinois State Police, and Chicago area police agency commanders, Rosemont Convention Center, Rosemont, IL. April, 2024.
- **Instructor:**
  TASERCON-Axon/Accelerate, Miami Beach Convention Center, addressing TASER and the Use of Force Continuum, and Response to TASER "Take-Away", April 22-26, 2024.

**Adjunct Instructor:**

- Drury University Law Enforcement Training Academy, Springfield, Missouri.
- Drury University Criminal Justice undergraduate course work.
- Indian Meridian Law Enforcement Training Center, Stillwater, Oklahoma.
- University of Missouri Law Enforcement Training Center, Columbia, Missouri.
- University of North Texas Police Academy, Denton, Texas.
- Barton County Community College, Great Bend, Kansas.
- Missouri State Highway Patrol Academy, Jefferson City, Missouri.
- Nebraska Law Enforcement Training Academy, Grand Island, Nebraska.
- Criminal Justice Undergraduate Programs, Evangel University, Springfield, Missouri

**Programs:**

I have trained thousands of officers around the world since 1986, on a variety of law enforcement topics, including:

- supervision and management of special weapons teams
- chemical munitions and aerosols
- patrol response to high-risk incidents
- fundamental and advanced SWAT concepts
- selection, evaluation, and use of less lethal force options
- use of explosives in law enforcement
- hostage rescue
- noise flash diversionary devices

- vehicle assaults
- executive protection/dignitary escort
- stopping and approaching vehicles
- narcotic and dangerous drug investigations
- use of force/de-escalation/level of force continuum
- use of the police long rifle marksman/observer
- Police interaction with the mentally ill-with special emphasis on hostage/barricades

- **Consultation:**
  I have provided assessment, consultation, investigative services and/or expert testimony on cases at the local, state, national, and international law enforcement level.
- **Security Clearance:**
  United States Government, Secret

## OPERATIONAL EXPERIENCE

I have served in a wide variety of policing areas, including uniformed patrol, major crimes investigations, undercover narcotics (including approximately 300 "hand to hand" drug buys, as well as almost daily interaction with police informants and federal drug investigators). and SWAT. I also served as a supervisor and commander in both the Operations and Investigations Division, directing the activities of over 350 employees. The commands included the direct review of approximately 1400 police use of force incidents, 250 vehicle pursuits, and numerous SWAT operations (approximately 300 search warrants, 20 barricaded suspects, and an occasional hostage incident each year). Division officers were assigned to the following sections:

- Uniformed Patrol
- Traffic
- SWAT
- Crisis Negotiators
- K-9
- Community Policing
- DARE/Crime Prevention
- Police Reserves
- Community volunteers
- Criminal Investigations
- Narcotics Investigations

- Crisis Action Team (SWAT) founder and team leader-supervisor-commander since its inception. The team is a full-time tactical unit that is recognized throughout the nation for its performance and dedication to training and professionalism. As an operator I served in a variety of roles including police long rifle marksman/observer, breacher (explosive and conventional), and entry team member. I have participated in, supervised, and/or reviewed my teams operational role in:

A. Over 2000 narcotic/high risk search warrants (approximately 1,500 personally).
B. The resolution of over 200 barricaded suspect incidents.
C. The resolution of eight hostage situations-three requiring rescue entries, and two requiring a police long rifle marksman.

- I was the Special Operations Commander for three years, during which time I had command of all agency narcotic investigations, which involved the work of two sergeants and approximately 20 investigators, four of which were assigned to Drug Enforcement Administration task forces. This command involved thousands of interactions involving informants, drug purchases (informant and undercover officer made), drug related surveillance, and the procurement and service of search warrants-many involving Federal Drug Enforcement Task Forces.
- I was the Investigations Division Commander for 6.5 years, during which time I had command of all agency criminal investigations. This included the direct command and oversight of thousands of investigations ranging from thefts to homicides and officer involved shootings. This assignment also included the command and oversight of the Special Operations Commander, two sergeants, and approximately 30 investigators, whose work efforts involved thousands of interactions involving informants, drug purchases (informant and undercover officer made), surveillance, and the procurement and service of search warrants-many involving Federal Drug Enforcement Task Forces.

## PROFESSIONAL ACCOMPLISHMENTS

- Awarded the American Police Hall of Fame, "Silver Star for Bravery", for the deadly force neutralization of a hostage taker/robber armed with a shotgun during a rescue entry into a convenience store.
- Appointed to the original National Tactical Officers Associations (NTOA) Board of Directors in 1992, and holding a board position until 1998.
- Recipient of the 1995 National Tactical Officers Association Award of Excellence (John Kohlman Award), the organizations highest honor.
- Appointed chair of the National Tactical Officers Association (NTOA) Less Lethal Force section, 1998, 1999, 2000.
- Appointed as an Editorial Advisor for Police Chief Magazine, Journal of the International Association of Chiefs of Police (IACP), 1998.
- Appointed to the NTOA Less Lethal Force “Delphi Group”, consisting of 25 experts in the field of use of force, tasked with creating a “model policy” for the training and deployment of less lethal projectiles.
- Appointed to the NTOA Hostage Rescue “Delphi Group”, consisting of 25 experts in the hostage rescue, tasked with creating a “best practices model policy” for resolving hostage scenarios.
- Authored over 100 articles in international and peer reviewed law enforcement trade magazines, including the NTOA magazine The Tactical Edge, the IACP magazine The Police Chief, Police, Law and Order, Tactical Response, Policeone.com, Law Officer, and Police and Security News, addressing such topics as hostage rescue, explosives in law enforcement, live fire shooting house

construction, Less Lethal Force Options, Chemical Agents, Forced Entry, Noise/flash diversionary devices, TASER technology, Police interaction with the mentally ill, and command level decision making in crisis situations.

- Appointed to the Post Certification Governing Board, law Enforcement Continuing Education, Southwest Missouri State University-1996.
- Tactical consultant for the Paramount Pictures version of the Tom Clancy novel, Rainbow Six, December 1999.
- Selected as a subject matter use of force/tactical and patrol operations expert by the International Association of Chiefs Police (IACP), to participate in the process of creating Model Policies for SWAT Teams and their related Operations. 1999
- Model policy and training key writer for the International Association of Chiefs of Police, National Policy Center, addressing Impact Projectiles, Noise Flash Diversion Devices, Chemical Munitions, Electro-muscular disruption (TASER) systems, Special Weapons and Tactics, patrol rifles, and hostage-barricade resolution. 1999-2020
- Appointed to the editorial advisory board, Tactical Response Magazine, July 2003.
- Appointed-editorial/policy advisory board, Policeone.com, March 2008
- Appointed-International Association of Chiefs of Police, National Policy Center, 2009

## PROFESSIONAL ORGANIZATION AFFILIATION

- International Association of Chiefs of Police (IACP)
- National Tactical Officers Association (NTOA)
- FBI National Academy Associates (FBINAA)
- KC Metro Tactical Officers Association (KCMTOA)
- Illinois State Tactical Officers Association (ITOA)
- California Tactical Officers Association (CATO)
- International Association of Law Enforcement Firearms Instructors (IALEFI)
- International Association of Law Enforcement Trainers Association (IALETA)
- American Society of Law Enforcement Trainers (ASLET)
- Board Member-National Alliance for the Mentally Ill (NAMI)

## PERSONAL INFORMATION

- Born in 1957
- Married since 1979
- Two adult children

## CONTACT INFORMATION

Steve Ijames
1258 South Rosemoor Drive
Nixa, Missouri 65714

Telephone-417-838-4274
lesslethal@aol.com