# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

OMAR O'HARA,                      )
                                  )
    Plaintiff,                    )
                                  )
v.                                )      No. 4:23CV442 HEA
                                  )
TERRENCE LOTT and                 )
MARLISSA BUTLER-CHERRY,           )
                                  )
    Defendants.                   )
                                  )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, [ECF No. 64], and Plaintiff's Motion to Exclude Defendants' Expert, [ECF No. 69]. For the reasons set forth below, Defendants' Motion for Summary Judgment is denied, and Plaintiff's Motion to Exclude Defendants' Expert is granted.

## I.     Facts and Background[1]

Plaintiff Omar O'Hara brings this civil rights action against Defendants Terrence Lott and Marlissa Butler-Cherry, who are police officers with the University City Police Department ("UCPD"), in their individual capacities. [ECF No. 1]. Plaintiff alleges that Defendants violated his constitutional rights when they

---

[1] Unless otherwise noted, the facts in this section are not in dispute.

wrongfully arrested him during the early morning hours on March 15, 2023. *Id.* at 1-3. Plaintiff brings claims of excessive force (Count I), unlawful seizure (Count III), battery (Count IV), and false arrest and imprisonment (Count V) against Defendant Lott; and he asserts that Defendant Butler-Cherry failed to intervene (Count II), *id.* at 5-6.[2]

In February 2023, Plaintiff's driver's license was revoked after an unrelated traffic stop. Plaintiff filed a petition for review of the revocation in state court, and he obtained an order staying the revocation while the petition was pending. On March 15, 2023, the Regional Justice Information System ("REJIS") showed that Plaintiff had a February 2023 "chemical action" pending in municipal court and the status of that action was "Stayed Appealed."[3]

In his deposition, Plaintiff testified that he met with a friend in University City on the evening of March 14, 2023. The following morning, Plaintiff drove his

---

[2] In Count V, Plaintiff challenges both his arrest and his subsequent 24-hour detention, which was allegedly ordered by Defendant Lott, as lacking probable cause. [ECF No. 1 at 8].

[3] Defendants object to the facts in this paragraph as irrelevant but do not specifically controvert them. [ECF No. 86 at 1-2]. As a result, the uncontroverted facts are deemed admitted for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion); E.D. Mo. L.R. 4.01(E) (providing that all matters set forth in a party's "Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

friend to her car, which was parked at Blueberry Hill restaurant. Plaintiff testified that on the morning of March 15, 2023, he had been awake for approximately 36 hours due to family and work obligations. Before leaving the restaurant, Plaintiff fell asleep in his car and was awakened when Defendant Lott opened his car door.[4]

Defendant Lott ordered Plaintiff to exit his car, and Plaintiff complied. After conducting a pat-down and finding that Plaintiff was unarmed, Defendant Lott stated that Plaintiff appeared to be intoxicated and that he was being detained. Plaintiff responded that he was not intoxicated but merely tired. After Plaintiff provided his identifying information to Defendants, Defendant Butler-Cherry went to her vehicle and called police dispatch while Defendant Lott continued to speak with Plaintiff.

Defendant Lott asked Plaintiff if he had any physical impairments that would prevent him from performing a field sobriety test, and Plaintiff stated that he was tired due to working long hours and that he had recently fallen down the stairs and injured his back. After administering the field sobriety tests, Defendant Lott told Plaintiff that he could relax, and Plaintiff stood still with his arms crossed.[5]

---

[4] Defendants object to the facts in this paragraph as irrelevant but do not specifically controvert them. [ECF No. 86 at 2-3]. *See* Fed. R. Civ. P. 56(e)(2); E.D. Mo. L.R. 4.01(E).

[5] The parties dispute the results of the field sobriety tests. The video evidence does not conclusively disprove Plaintiff's assertion that he successfully completed the tests.

While Defendant Lott was administering the tests, the video evidence shows that Defendant Butler-Cherry radioed dispatch to request an inquiry on Plaintiff and then entered Plaintiff's identifying information into REJIS on her police laptop as she waited for dispatch's response, but the results of her search are not legible in the video. A couple of minutes later, dispatch told Defendant Butler-Cherry that Plaintiff's license had been revoked.

Defendant Butler-Cherry then returned to where Defendant Lott and Plaintiff were standing and relayed the information from dispatch. Defendant Lott immediately told Plaintiff to put his hands behind his back and grabbed him by the arm, and Defendant Butler-Cherry grabbed Plaintiff's other arm. Plaintiff repeatedly asked Defendants why he was being arrested, and Defendants stated that he was being arrested for driving with a revoked license. Plaintiff stated in his deposition that he had been confused during the encounter because the revocation of his license had been stayed.[6] Defendant Lott stood behind Plaintiff and repeated the order to put his hands behind his back. Plaintiff continued standing with his arms crossed and asking Defendants why he was being arrested. Then—approximately 30 seconds after first ordering Plaintiff to put his hands

---

[6] Defendants object to Plaintiff's statements regarding his mental state as irrelevant but do not specifically controvert them. [ECF No. 86 at 5-6]. *See* Fed. R. Civ. P. 56(e)(2); E.D. Mo. L.R. 4.01(E).

behind his back—Defendant Lott applied his taser in drive-stun mode against the right side of Plaintiff's back for approximately 12 seconds.[7]

The parties dispute certain facts about the 30 seconds after Defendant Lott first deployed the taser. Defendants assert that Plaintiff attempted to grab Defendant Lott's taser and actively resisted arrest, making Defendant Lott's subsequent uses of force reasonable. But Plaintiff testified that he never attempted to grab the taser, and the video evidence does not clearly disprove Plaintiff's version of events.

The following facts concerning the 30 seconds after Defendant Lott first deployed the taser are undisputed: Plaintiff leaned to his left as he was being tased, Defendant Lott moved with Plaintiff and held onto his arm, and Defendant Butler-Cherry grabbed Plaintiff's other arm. Defendant Lott kicked Plaintiff in the groin multiple times, and then fell with Plaintiff to the ground. After Plaintiff fell on his back onto the ground, Defendant Lott righted himself, knelt across Plaintiff's torso, grabbed Plaintiff's arm, tased him again, and repeatedly struck

---

[7] When deploying a taser in drive-stun mode, the taser is applied directly against a person's body, which causes a painful burning sensation. [ECF No. 82-15 at 3]. Defendants object to Plaintiff's statements about the taser as irrelevant but do not specifically controvert them. [ECF No. 86 at 24].

Plaintiff in the face and head with his fist and elbow.[8] Defendant Lott then grabbed Plaintiff's wrists and held them down with his body weight.

At Defendant Lott's request, Defendant Butler-Cherry called for assistance, While he was on the ground, Plaintiff repeatedly asked Defendant Lott, "Why are you doing this?" Defendant Lott stated that Plaintiff had assaulted him, and Plaintiff responded that he had not assaulted Defendant Lott and that "you assaulted me." While Defendant Lott was kneeling on his chest, Plaintiff looked at Defendant Butler-Cherry and stated multiple times that he "didn't do anything to [Defendant Lott]" and that "[Defendant Butler-Cherry] saw that."

Approximately 30 seconds after Defendant Butler-Cherry called for assistance, additional officers arrived at the scene. Three of the officers immediately grabbed Plaintiff's arms and legs, flipped him onto his stomach, and then handcuffed him. After Plaintiff had been flipped onto his stomach and was being held down by the three officers, Defendant Lott tased Plaintiff a third time. While he was being restrained by the officers on the ground, Plaintiff continued asking, "Why are you guys doing this?" and "Why are you being like this?" He repeatedly stated that he "didn't do anything to deserve this" and that "there's no reason for this." As the other officers escorted him to a police car, Plaintiff said

---

[8] Plaintiff asserts that Defendant Lott was holding the taser in his right hand while striking him in the head, [ECF No. 86 at 12], but this is not clearly depicted in the video evidence.

that "this is so rough and unnecessary" and that he had "never done anything to anyone here." Plaintiff did not raise his voice at any time during the incident.

At an August 2024 municipal bench trial concerning charges arising from the March 15, 2023 incident, Defendant Lott testified that Plaintiff had not made any threatening movements towards him or verbally threatened him before he initially deployed the taser.[9] Defendant Lott stated that he decided to drive stun Plaintiff because he had a sore knee and did not want to further injure it. Defendant Butler-Cherry testified that Plaintiff did not threaten her, attempt to flee, or strike anyone during the incident.

## II.    Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify those portions of the

---

[9] Defendants object that Plaintiff's statements regarding their testimony at the municipal bench trial are irrelevant but do not specifically controvert them. [ECF No. 86 at 18-20]. Defendants also challenge the admissibility of the declaration supporting Plaintiff's statements, arguing that the declaration is hearsay. *Id.* First, Defendants' prior testimony regarding Plaintiff's arrest is plainly relevant to this matter. Second, Federal Rule of Civil Procedure 56(c)(1)(A) specifically lists declarations and affidavits as examples of competent evidence that parties can use to support their statements of fact at summary judgment, and statements of party opponents are not hearsay. Fed. R. Civ. P. 801(d)(2).

record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation modified). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (citation modified).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But "the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (citation modified). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci*, 557 U.S. at 586).

**B.    Discussion**

To determine whether an official is entitled to qualified immunity, the Court asks: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right at issue was clearly

8

established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

### 1. § 1983 Excessive Force (Count I) & State Law Battery (Count IV)

Plaintiff alleges that Defendant Lott violated his clearly established right to be free from excessive force by initially tasing him, repeatedly striking him in the groin and face, and tasing him after multiple officers had restrained and cuffed him on the ground. Defendant Lott contends that he is entitled to qualified immunity because each use of force was reasonable. He asserts that Plaintiff's battery claim fails because he did not use excessive force, and as a result, he is entitled to official immunity under Missouri law.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* (quoting *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013)).

9

"The inquiry is based on the totality of the relevant circumstances, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Westwater v. Church*, 60 F.4th 1124, 1128 (8th Cir. 2023) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Courts "analyze these factors from 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham*, 490 U.S. at 396). This analysis accounts "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

"[W]hen the issue of unreasonable force is raised in a motion for summary judgment, a court must construe the facts in favor of [Plaintiff], the non-moving party." *Westwater*, 60 F.4th at 1128-29 (citing *Frederick v. Motsinger*, 873 F.3d 641, 644 (8th Cir. 2017)). "Thus, when opposing parties tell two different stories, the court must view material disputed facts in a light most favorable to the non-moving party—as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Id.* at 1129 (citation modified). "The critical factor in this excessive force case, as in most others, is whether

[Plaintiff] . . . posed a realistic threat to the safety of [Defendants] or a risk of flight that justified the degree of force used." *Id.*

"Because officers have the right to make arrests and investigatory stops, they are permitted to use some degree of physical coercion or threats to facilitate an arrest or stop." *Nieters v. Holtan*, 83 F.4th 1099, 1108 (8th Cir. 2023) (citing *Wilson v. Lamp*, 901 F.3d 981, 989-90 (8th Cir. 2018)). But "an officer's 'use of force against a suspect who was not threatening and not resisting' is unreasonable." *Wilson*, 901 F.3d at 990 (quoting *Shannon v. Koehler*, 616 F.3d 855, 864-65 (8th Cir. 2010). "The use of force is least justified against a nonviolent misdemeanant who does not flee or actively resist arrest and poses little threat to officers or the public." *Westwater*, 60 F.4th at 1129 (quoting *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020)).

Under Missouri law, "a police officer has the benefit of official immunity," which "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017) (citation modified). An officer's decisions to arrest someone and to use force in the performance of his duties are discretionary. *Id.* Official immunity does not apply "when an officer 'uses more force than is reasonably necessary' when making an

11

arrest." *Hendrix v. City of St. Louis*, 636 S.W.3d 889, 902 (Mo. Ct. App. 2021) (quoting *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987)).

Under the totality of the circumstances, the Court finds that there are genuine disputes of material fact as to whether Defendant Lott used excessive force against Plaintiff. It is undisputed that Plaintiff was suspected of a nonviolent misdemeanor, and with respect to the initial tasing, Defendants do not point to any evidence suggesting that Plaintiff was an immediate threat to the safety of Defendants or the public, and there is no evidence in the record indicating that Plaintiff was actively resisting or attempting to flee prior to the initial tasing. Although Defendants contend that the initial tasing was reasonable because Plaintiff did not immediately comply with Defendant Lott's orders to put his hands behind his back, "[n]oncompliance and arguing do not amount to active resistance." *Tatum v. Robinson*, 858 F.3d 544, 549 (8th Cir. 2017) (collecting cases). Additionally, there is nothing in the record indicating that Defendant Lott was faced with the need to make any "split-second judgments" or that the circumstances were "tense, uncertain, and rapidly evolving" in the moments before he first deployed the taser. *See Graham*, 490 U.S. at 396-97.

Defendants contend that Defendant Lott's subsequent kicks to Plaintiff's groin, blows to Plaintiff's face, and deployments of the taser were reasonable because the videos of the incident show that Plaintiff was struggling for control of

12

the taser and resisting arrest, but the videos do not conclusively disprove Plaintiff's view of the incident, which is that his body instinctively turned away from and attempted to bat away the unexpected source of pain when Defendant Lott initially drive stunned him in the back without a warning. The videos also do not clearly contradict Plaintiff's allegation that he was not resisting arrest or attempting to grab the taser when Defendant Lott kicked him at least twice in the groin and struck him repeatedly in the head and face while he was pinned to the ground under Defendant Lott's weight. A jury could believe Plaintiff's version of events—namely, that after the initial tasing, he only raised his arms to maintain balance and protect his face and body from Defendant Lott's blows. *See Westwater*, 60 F.4th at 1129 ("[W]hen opposing parties tell two different stories, the court must view material disputed facts in a light most favorable to the non-moving party." (citation modified)). Additionally, the video evidence shows that Defendant Lott's final deployment of the taser took place while Plaintiff was lying on his stomach and being restrained by three police officers, and the videos do not conclusively show that Plaintiff was actively resisting arrest at that time. Thus, viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude that Defendant Lott's uses of force were objectively reasonable as a matter of law.

13

Defendants argue that Plaintiff cannot show that the case law was clearly established such that a reasonable officer in Defendant Lott's position would understand that his conduct violated Plaintiff's constitutional rights under the circumstances. The Court disagrees. It is clearly established that "an officer's 'use of force against a suspect who was not threatening and not resisting' is unreasonable." *Wilson*, 901 F.3d at 990 (quoting *Shannon*, 616 F.3d at 864-65); *see, e.g.*, *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009) ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public."); *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) (concluding that defendant's use of pepper spray "may have been a gratuitous and completely unnecessary act of violence" that violated plaintiff's Fourth Amendment rights where plaintiff asserted that he did not resist arrest, was lying on the ground, and posed "little or no threat" to the safety of anyone (citation modified)); *cf. Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983) ("The use of any force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned." (citation modified)). Accordingly, summary judgment must be denied as to Counts I and IV.

## 2. § 1983 Failure to Intervene (Count II)

Defendants argue that Defendant Butler-Cherry had no duty to intervene because Defendant Lott's uses of force were reasonable. Alternatively, if Defendant Lott's uses of force were not reasonable, Defendants assert that the video evidence shows that Defendant Butler-Cherry did not have a reasonable opportunity to intervene. Plaintiff contends that Defendant Butler-Cherry had ample time to intervene as Defendant Lott was tasing, kicking, and hitting him.

It is "clearly established that a state actor may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official." *Krout v. Goemmer*, 582 F.3d 557, 565 (8th Cir. 2009). A police officer may be liable for failing to "intervene to prevent the use of excessive force when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015) (quoting *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)).

Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendant Butler-Cherry violated Plaintiff's clearly established rights when she observed Defendant Lott's uses of excessive force and had an adequate opportunity to intervene but failed to do so. Defendants contend that there

was no reasonable opportunity for Defendant Butler-Cherry to intervene, but they point to no evidence that specifically contradicts Plaintiff's contention that Defendant Butler-Cherry was in a position to prevent Defendant Lott's excessive uses of force and failed to do so.

The video evidence shows that approximately two minutes elapsed between Defendant Lott's first and final deployments of the taser and that Defendant Butler-Cherry was standing next to Plaintiff and Defendant Lott the entire time. Based on these facts, the Court finds that Plaintiff has established a submissible case against Defendant Butler-Cherry for failing to intervene. *Nance*, 586 F.3d at 612 (concluding that an officer may be liable for "failure to take action to deescalate the situation if he had an opportunity and means to do so" where defendant admitted that he failed to give any warning or try to stop another officer from using excessive force (citation modified)); *Krout*, 583 F.3d at 566 (holding that five minutes was "a period which a jury could find sufficient to afford the onlooking officers an opportunity to intervene"); *Forgarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (holding that a period of three minutes was sufficient to give defendant an opportunity to intervene); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a

16

reasonable jury *could not possibly conclude otherwise*." (quoting *Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 478 (7th Cir. 1997))). Thus, Defendant Butler-Cherry is not entitled to summary judgment on Count II.

### 3. § 1983 Unlawful Seizure (Count III) & State Law False Arrest (Count V)

Defendants argue that Defendant Lott is entitled to qualified immunity on Counts III and V because he had arguable probable cause to arrest Plaintiff for driving while intoxicated and driving with a revoked license. Plaintiff counters that there are genuine disputes of material fact about whether Defendant Lott had probable cause to arrest him for the alleged offenses.

"A warrantless arrest is reasonable under the Fourth Amendment 'where there is probable cause to believe that a criminal offense has been or is being committed.'" *Dunn v. Does 1-22*, 116 F.4th 737, 746 (8th Cir. 2024) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). And in 2023, it was clearly established that "a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Id.* (quoting *Thurairajah v. City of Fort Smith*, 925 F.3d 979, 984 (8th Cir. 2019)).

Under Missouri law, "[a] false arrest occurs when there is a confinement without legal justification." *Kurtz v. Shrewsbury*, 245 F.3d 753, 757 (8th Cir. 2001) (citing *Desai v. SSM Health Care*, 865 S.W.2d 833, 836 (Mo. Ct. App. 1993)). "The unlawfulness of the restraint is a key element in a cause of action for false

17

arrest." *Id.* (citing *Desai*, 865 S.W.2d at 836). "A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed." *Id.* (citing *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir. 1986)).

"Probable cause exists when the totality of the circumstances shows that a prudent person would believe that the arrestee has committed a crime." *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). "Exculpatory evidence is therefore relevant to whether an officer has probable cause." *Id.* "An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (citing *Bigford v. Taylor*, 834 F.3d 12134, 1218 (5th Cir. 1988)). "But officers are still entitled to qualified immunity if they have arguable probable cause—that is, 'if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable.'" *Dunn*, 116 F.4th at 746 (quoting *Amrine*, 522 F.3d at 832). "That the officer may have mistakenly thought he had probable cause to arrest for other offenses is immaterial so long as probable cause existed for the one offense." *Arnott v.*

18

*Mataya*, 995 F.2d 121, 124 n.3 (8th Cir. 1993) (citing *Linn v. Garcia*, 531 F.2d 855, 862 (8th Cir. 1976)).

At the time of Plaintiff's arrest, existing precedent established that a warrantless arrest must be supported by probable cause and that in assessing whether probable cause exists, "an officer must not disregard plainly exculpatory evidence, even if substantial inculpatory evidence suggests that probable cause exists." *Bell v. Neukirch*, 979 F.3d 594, 608 (8th Cir. 2020) (citing *Kuehl*, 173 F.3d at 650). "Law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking to arrest." *Kuehl*, 173 F.3d at 650 (citation modified). "An officer need not conduct a 'mini-trial' before making an arrest, . . . but probable cause does not exist when a 'minimal further investigation' would have exonerated the subject." *Id.* (citation modified). "As probable cause is determined 'at the moment the arrest was made,' any later developed facts are irrelevant to the probable cause analysis for an arrest." *Amrine*, 522 F.3d at 832 (quoting *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004)).

In *Kuehl* and *Bell*, the Eighth Circuit held that there was no probable cause to arrest the subjects where readily available exculpatory evidence showed that no

offense was committed. *Kuehl*, 173 F.3d at 650; *Bell*, 979 F.3d at 608-09. In *Kuehl*, the court concluded that there was no arguable probable cause because the officer there had spoken with the suspect for only twenty seconds, ignored exculpatory evidence, and disregarded an eyewitness account. 173 F.3d at 650. In *Bell*, the Eighth Circuit determined that a reasonable jury could conclude that the officer did not reasonably consider exculpatory video evidence because "it should have been obvious to any reasonable officer that [plaintiff's clothing] were different from the suspect's [clothing] at the scene." 979 F.3d at 608. The court explained that "[q]ualified immunity requires more than subjective good faith; it requires objectively reasonable official conduct." *Id.* at 608-09 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-16 (1982)). "Simply scanning a video does not make conduct objectively reasonable if an officer ignores or overlooks plainly exculpatory evidence." *Id.* at 609 (citing *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1259-60 (10th Cir. 1998)). Thus, the Eighth Circuit concluded that "[a]n officer who repeatedly watched the video and failed to take note of the substantial discrepancies between Bell and the suspect demonstrates less diligence that what is expected of competent police officers about to limit someone's liberty by arrest." *Id.*

In *Furlow v. Belmar*, the Eighth Circuit explained that:

a warrantless arrest prompted by a notice from one officer to another is unconstitutional unless: (1) the arresting officer is able to make an

independent finding of probable cause . . . or (2) the arresting officer has been working closely with the officer who made the initial and valid probable cause determination (encompassing both hot pursuit/fleeing suspect cases and collective knowledge doctrine cases).

52 F.4th 393, 404-05 (8th Cir. 2022) (citation modified). In *Furlow*, the Eighth Circuit concluded that the defendant detective was not entitled to qualified immunity because—while it was arguable that the detective had probable cause when she first issued the warrantless electronic notice ("Wanted")—by the time the defendant was arrested pursuant to the wanted, the detective did not make herself aware of the development of a state agency's investigation into the suspect's alleged conduct, which had been closed based on a finding of insufficient evidence; did not speak to the suspect about the allegations; and did not interact with any of the investigating agency's employees. *Id.* at 405. The Eighth Circuit concluded that under the circumstances, the detective "should have known that probable cause had evaporated" because if she "had engaged in even 'minimal further investigation,' then she would have been aware that probable cause (or even arguable probable cause) had dissipated, leave no continuing justification for the Wanted." *Id.*

With respect whether Defendant Lott had probable cause to believe that Plaintiff was driving while intoxicated, most of the material facts leading up to the arrest are in dispute. If Defendants' version of the facts is true, then Defendant Lott had probable cause to arrest Plaintiff, but if Plaintiff's version is true, then

21

Defendant Lott lacked probable cause. And contrary to Defendants' assertion, the video evidence does not clearly disprove Plaintiff's version of events. "In such a case, where the facts are disputed or where they are subject to different inferences, the question of probable cause is for the jury and summary judgment is inappropriate." *Arnott*, 995 F.2d at 124 (citing *Linn*, 531 F.2d at 861).

Defendants' only argument that Defendant Lott had probable cause to arrest Plaintiff for driving with a revoked license is that Defendant Butler-Cherry "was told by dispatch that Plaintiff's license was revoked. She told this to Sgt. Lott, who then had arguable probable cause to arrest Plaintiff for driving while revoked." [ECF No. 87 at 7]. Plaintiff emphasizes that his license was not, in fact, revoked at the time of his arrest and contends that, in the absence of exigent circumstances, Defendant Lott lacked probable cause, failed to conduct a reasonably thorough investigation, and failed to give him an opportunity to explain that the revocation had been stayed prior to arresting him. [ECF No. 80 at 23].

Defendants have not shown that Defendant Lott had arguable probable cause to arrest Plaintiff for driving with a revoked license. It is undisputed that Defendant Lott "was not himself possessed of any factual data tending to corroborate" that Plaintiff was driving with a revoked license, *see Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971), and that—in the absence of exigent circumstances—Defendant Lott did not attempt to make an independent finding of

22

probable cause even though readily available exculpatory evidence such as REJIS and the docket in Plaintiff's revocation case showed that no offense was committed, *see Furlow*, 52 F.4th at 405 (explaining that a "warrantless arrest prompted by a notice from one officer to another is unconstitutional unless: (1) the arresting officer is able to make an independent finding of probable cause . . . or (2) the arresting officer has been working closely with the officer who made the initial and valid probable cause determination" (citation modified)); *Bell*, 979 F.3d at 605, 608-09 (concluding that the officers lacked probable cause where they could have used "readily available sources" for corroborative identification); *Romero v. Fay*, 45 F.3d 1472, 1476-77 & n. 2 (10th Cir. 1995) (stating that police need not interview alleged alibi witnesses but must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention"); *Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances." (citation modified)); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be

23

pursued especially when, as here, it is unclear whether a crime had even taken place.").

Defendants do not dispute that the revocation of Plaintiff's license had been stayed or that REJIS reflected that the revocation had been stayed at the time of Plaintiff's arrest, and they do not argue that either Defendant Butler-Cherry or the police dispatcher had probable cause that could be imputed to Defendant Lott. *Cf. United States v. De Leon-Reyna*, 898 F.2d 486, 490 (5th Cir. 1990) ("The government cannot bootstrap reasonable suspicion from an officer's good faith reliance on a radio report when the . . . dispatcher lacked reasonable suspicion. The issuance of an incorrect registration report due to police negligence is no different from the distribution of a wanted flyer without reasonable suspicion in *Whiteley*."); *United States v. Thompson*, 906 F.2d 1292, 1296 n.7 (8th Cir. 1990) (explaining that an officer "was entitled to rely on the information [that had been received by another officer from a reliable confidential informant and] transmitted over the all-points bulletin as long as the originator of the radio bulletin had reasonable suspicion to believe a crime would be or had been committed") (citing *Hensley*, 469 U.S. at 232). Thus, Defendant Lott's reliance on Defendant Butler-Cherry's incorrect statement was not objectively reasonable. *See De Leon-Reyna*, 898 F.2d at 489-90 ("[T]he police may not rely upon incorrect or incomplete information when they are the ones responsible for that faulty information." (citing LaFave, 2

24

SEARCH & SEIZURE § 3.5(b) (2d ed. 1987))); *State v. Kinkead*, 983 S.W.2d 518 (Mo. 1998) (en banc) (concluding that the state failed to show that the dispatch was based on probable cause where the defendant had shown that the dispatcher's information that his license had been suspended was false and the prosecution "made no attempt to show that the dispatcher had probable cause").

Like the defendants in *Furlow* and *Kuehl*, if Defendant Lott had "engaged in even 'minimal further investigation,' then []he would have been aware that probable cause (or even arguable probable cause) had dissipated." *See Furlow*, 52 F.4th at 405; *Kuehl*, 173 F.3d at 650. And nothing in the record suggests that Defendant Lott would have been "unduly hampered" by running a separate REJIS search, reviewing the docket in Plaintiff's municipal case, and conducting "a more thorough interview of [Plaintiff]." *See Kuehl*, 173 F.3d at 650-51 (collecting cases); *Romero*, 45 F.3d at 1476-77 ("[T]he probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."). Accordingly, summary judgment will be denied as to Counts III and V.

### III.    *Motion to Exclude Defendants' Expert*

Plaintiff moves to exclude the opinions, testimony, and report of Defendants' police-practices expert, Steven Ijames, under *Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. Plaintiff

argues that all four of Ijames's opinions constitute impermissible legal conclusions,

would not assist the jury, and are irrelevant, unreliable, and inadmissible.

Defendants argue that certain portions of Opinions I and II are admissible and will

assist the jury in deciding whether Defendant Lott had probable cause to arrest

Plaintiff and whether he used excessive force. They concede, however, that

Opinions III and IV, which relate to Plaintiff's battery and failure-to-intervene

claims, constitute impermissible legal conclusions. As a result, Opinions III and IV

will be excluded. Opinions I and II will be also excluded for the reasons that

follow.

## A.    Ijames's Report

Opinion I concerns whether Defendant Lott had arguable probable cause to

arrest Plaintiff. In his report, Ijames provides the following summary for Opinion I:

> Sergeant Lott had adequate knowledge and reasonably trustworthy
> information, facts, and a totality of circumstances that were sufficient
> to lead a prudent, experienced, and professionally trained police officer
> to believe that Mr. Omar O'Hara had committed the crimes of operating
> a motor vehicle with a revoked license and while intoxicated.
> Accordingly, his arrest was not an unreasonable seizure but was based
> on a totality of circumstances that a prudent, experienced and
> professionally trained police officer would have recognized as adequate
> probable cause, and was not a "false arrest/imprisonment" but an arrest
> that was justified, appropriate, consistent with generally and commonly
> accepted police training, policy, and practice, and consistent with that

26

of a prudent, experienced, and professionally trained police officer facing these or similar circumstances.

[ECF No. 70-2 at 2]. In his report, Ijames states that Opinion I is based on his review of the video evidence, out-of-court interviews with Defendants at the UCPD on August 12, 2024, and the narrative from Defendant Butler-Cherry's police report. *Id.* at 2-8. He concludes that:

> If it is assumed that the information provided by Sgt. Lott and Officer Butler-Cherry accurately characterizes what they observed and or reasonably perceived and believed, then the totality of circumstances outlined above would have been adequate knowledge and reasonably trustworthy information and facts, sufficient to lead prudent, experienced, and professionally trained police officers to believe that Mr. Omar O'Hara had committed the crimes of operating a motor vehicle with a revoked license and while intoxicated.

*Id.* at 8.

In Opinion II, Ijames discusses Defendant Lott's uses of force. In his report, Ijames summarizes Opinion II as follows:

> The soft empty hand, TASER, and hard empty hand (kicking/striking) force used by Sgt. Lott against Mr. Omar O'Hara was based on adequate cause, basis, and provocation, was used to overcome the resistance to arrest being put forth, was used to control/secure/recover and prevent the unlawful procurement of a police weapon (TASER) by the suspect, was in self-defense and defense of others, and was to effect an arrest. Accordingly[,] the force used was not excessive, was consistent with that of a prudent, experienced, and professionally trained police officer facing these or similar circumstances, and was consistent with commonly accepted police training, policy, and practice when facing these or similar circumstances.

[ECF No. 70-2 at 8-9]. Ijames states that Opinion II is based on his review of the video evidence, his out-of-court interview with Defendant Lott, national policing standards, and the UCPD's Use of Force Policy. Screenshots from the video evidence are interspersed throughout Ijames's report, most of which are accompanied by captions describing what he claims the screenshots show.[10]

In the final "Overall Force Assessment" section, Ijames says that "[i]n assessing whether the overall force used and referenced above was consistent with generally and commonly accepted police training and practice, the totality of circumstances presented should be viewed in the context of the key factors referenced under *Graham v. Connor*[:]"

- **The severity of the crime involved**: The totality of circumstances presented would have caused a prudent, experienced, and professionally trained police officer to believe that Mr. O'Hara had been placed under arrest for operating a motor vehicle under revocation and while intoxicated, and that he then feloniously disarmed and assaulted a police officer while resisting the above referenced arrests.

---

[10] Based on the allegations in Ijames's report, it appears that his interview with Defendant Lott involved reviewing the video evidence with Defendant Lott and asking him to characterize what was happening at any given moment. All of Ijames's captions are consistent with his allegations about what Defendant Lott purportedly told him during the out-of-court interview. *See, e.g.*, [ECF No. 70-2 at 13] (stating in the body of the report that "Lott addressed this point of the interaction during out interview, stating, 'I fell and rolled, and put myself of top of him. . . . He then grabbed the TASER. . . .'"; and stating in the caption, "Mr. O'Hara grabbing Sgt. Lott's right arm/wrist, which is holding the TASER"). Contrary to Ijames's caption, the screenshot does not show Plaintiff holding the taser. Defendant Lott's body is blocking the view, and the taser's light—which points in the same direction as the taser's electrodes—is pointed at Plaintiff's back.

• **The immediate threat to the safety of officers or others**: Mr. O'Hara was actively and assaultively resisting arrest, was attempting to disarm Sgt. Lott and reportedly disarmed Sgt. Lott. The TASER is a less lethal device when used lawfully as designed and intended. Likewise, in the hands of a suspect who has feloniously taken it from a police officer and is using it or potentially using against him while resisting arrest (as a striking instrument, or electronically to gain tactical advantage and increase the probability of causing death or serious physical injury), this has provided adequate cause and basis for the justified use of deadly force on numerous occasions nationwide. Accordingly, the totality of these circumstances would have caused a prudent, experienced, and professionally trained police officer to reasonably believe that Mr. O'Hara was an immediate threat to officers.

• **The suspect actively resisting seizure**: Mr. O'Hara was actively resisting seizure and doing so while attempting to disarm and after having disarmed a police officer.

• **Rapidly evolving circumstances**: The totality of circumstances presented in this case were tense, uncertain, and rapidly evolving.

*Id.* at 24-25.

"In consideration of the totality of circumstances and information provided above," Ijames concludes that:

> a prudent, experienced, and professionally trained police officer facing these or similar circumstances would have believed that the key factors in *Graham v. Connor* had been met, and that he/she was justified to use the soft empty hand, grappling techniques, TASER, and kicks/strikes as described and acknowledged in self-defense, defense of others, to overcome resistance to control, to prevent disarming and to recover a lost weapons, and to effect an arrest.

*Id.* at 25.

## B.     Legal Standard

"The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686

(8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 imposes a special gatekeeping obligation on district courts to ensure that expert testimony "is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). Rule 702 "permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue." *Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010) (citing *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985)).

"The inquiry envisioned by Rule 702 is a flexible one." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 914 (8th Cir. 2017). "The test for determining the appropriateness of expert testimony is 'the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir. 1993) (quoting Fed. R. Evid. 702 advisory committee's note). "The touchstone for the admissibility of expert testimony is whether it will

assist or be helpful to the trier of fact." *Lee*, 616 F.3d at 808 (citing *McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994)).

"Rule 704(a) provides that expert evidence is not inadmissible because it embraces an ultimate issue to be decided by the jury." *Id.* at 808-09. "If the subject matter is within the jury's knowledge or experience, however, the expert testimony remains subject to exclusion 'because the testimony does not then meet the helpfulness criterion of Rule 702.'" *Id.* (citing *Arenal*, 768 F.2d at 269). "Opinions that 'merely tell the jury what result to reach' are not admissible." *Id.* (quoting Fed. R. Evid. 704 advisory committee's note). "[C]ourts must guard against 'invad[ing] the province of the jury on a question which the jury was entirely capable of answering without the benefit of . . . expert opinion." *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998) (quoting *Walton v. Sherwin-Williams Co.*, 191 F.2d 277, 285 (8th Cir. 1951)).

## C.    Discussion

### 1. Opinion I

Plaintiff argues that Ijames's opinions that Plaintiff's arrest "was not an unreasonable seizure," was supported by "reasonably trustworthy information" and "adequate probable cause," "was not a 'false arrest/imprisonment,'" and "was justified, appropriate, and consistent with generally and commonly accepted police training, policy, and practice" are impermissible legal conclusions. Plaintiff

contends that Ijames's opinions as to what the video evidence portrays are irrelevant and unhelpful to the jury. Defendants concede that "the Court may appropriately preclude Mr. Ijames from opining that this 'was not an unreasonable seizure' or that 'probable cause' to arrest existed." [ECF No. 73 at 5]. But they contend that Ijames "will provide an explanation of established policing standards and . . . context for the actions taken by [Defendants] in light of those standards." *Id.* Defendants assert that Ijames should be able to conclude that Plaintiff's arrest was within policing standards "if it is assumed that Sgt. Lott made the findings that he claims to have made." *Id.* at 6.

"A trial court may . . . exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990) (citing *Hogan v. AT&T*, 812 F.2d 409, 411 (8th Cir. 1987)); *Lee*, 616 F.3d at 809 ("Opinions that 'merely tell the jury what result to reach' are not admissible." (quoting Fed. R. Evid. 704 advisory committee's note)). The Eighth Circuit has repeatedly held that an expert's opinion about whether an officer's conduct was reasonable in light of constitutional standards and "nationally accepted standards" is a legal conclusion that does not assist the jury in determining the facts and is therefore inadmissible. *See, e.g.*, *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (holding that it was an abuse of

32

discretion to allow police-practices expert to testify that "each action the officers took was consistent with 'nationally accepted standards'" and that "the officers' conduct comported with the 'standards under the Fourth Amendment'" because it was a "statement of legal conclusion"); *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (concluding that the opinions of a police-practices expert regarding the overall reasonableness of evidence-collection and strip-search procedures used were impermissible legal conclusions).

In *Peterson*, the district court allowed a police-practices expert to testify on behalf of the defendant officers to show that they had acted reasonably in their encounter with the plaintiff. 60 F.3d at 475. The expert "set forth his opinion as to why each action the officers took was consistent with 'nationally accepted standards'" and "comported with the 'standards under the Fourth Amendment.'" *Id.* The Eighth Circuit explained that while "[b]oth probable cause and qualified immunity are ultimately questions of law," the jury's role was "limited to settling disputes as to predicate facts," which meant that "the jury was entitled to determine what facts were known to the officers at the time of the arrest." *Id.* (citing *Arnott*, 995 F.2d at 123-24). "None of [the expert]'s testimony assisted the jury in this regard" because the expert's "testimony involved only his views concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards.'" *Id.* Thus, the expert's testimony "was not a fact-based opinion, but a statement of

33

legal conclusion." *Id.* (citing *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (per curiam)). Because "[t]he legal conclusions were for the court to make," the Eighth Circuit concluded that "[i]t was an abuse of discretion to allow the testimony." *Id.*

As Defendants concede, much of Opinion I consists of impermissible legal conclusions about the reasonableness of Defendant Lott's conduct in light of constitutional standards. *See Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) ("Whether the police had probable cause at the time of [plaintiff]'s arrest is a question of law for a court to decide." (citing *Peterson*, 60 F.3d at 475)); *Estes*, 993 F.2d at 163 ("While the existence of probable cause is a mixed question of law and fact, the ultimate conclusion is a question of law. . . . The proposed testimony was, therefore, not opinion testimony but rather it was a statement of a legal conclusion." (citation modified)). Just like the expert's testimony in *Peterson*, Opinion I "set[s] forth [Ijames's] opinion as to why each action [Defendant Lott] took was consistent with 'nationally accepted standards,'" and "[h]is overall opinion [i]s that the officer['s] conduct comported with the 'standards under the Fourth Amendment.'" *Peterson*, 60 F.3d at 475. Because Opinion I "involves only [Ijames's] views concerning the reasonableness of [Defendant Lott's] conduct in light of 'Fourth Amendment standards,'" it does not constitute a "fact-based opinion, but a statement of legal conclusion." *Id.* And legal conclusions are for the

34

Court to make, not an expert witness. *See id.* ("The legal conclusions were for the court to make. It was an abuse of discretion to allow the [police-practices expert's] testimony."); *see also S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)  ("Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them."); *United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995) ("As a general rule, 'questions of law are the subject of the court's instructions and not the subject of expert testimony.'" (quoting *United States v. Vreeken*, 803 F.2d 1085, 1091 (10th Cir. 1986))).

Opinion I also "invad[es] the province of the jury on a question which the jury [i]s entirely capable of answering without the benefit of . . . expert opinion." *Robertson*, 148 F.3d at 908 (quoting *Walton*, 191 F.2d at 285). Like the expert opinion in *Lee*, Opinion I is "based on [Ijames's] observation of the video[s]—he did not employ any technique or utilize any specialized skill that is unavailable to the jury." *Lee*, 616 F.3d at 808. Because the jury will be "entirely capable of analyzing the images" and drawing inferences about what Defendants knew at the time of Plaintiff's arrest, Opinion I "does not . . . meet the helpfulness criterion of Rule 702." *Id.* at 809; *Pelster*, 987 F.2d at 526 ("The test for determining the appropriateness of expert testimony is 'the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a

specialized understanding of the subject involved in the dispute.'" (quoting Fed. R. Evid. 702 advisory committee's note)).

Further, the report makes clear that in reaching Opinion II, Ijames relied heavily on Defendants' out-of-court statements about the incident and the narrative in Defendant Butler-Cherry's police report, all of which is inadmissible hearsay, and that he accepted Defendant's hearsay version of events as true.[11] As such, Ijames's testimony would be unhelpful and usurp the jury's task of assessing the witnesses' credibility. *See Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (explaining that expert testimony "is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury" (citing *United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997))); *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. . . . Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion." (citation modified)). The jury

---

[11] *See, e.g.*, [ECF No. 70-2 at 2] ("On August 12, 2024, . . . I met with Sergeant Lott at the [UCPD and] asked him to tell me about his interaction with Mr. Omar O'Hara on March 15, 2023. He told me that . . . ."), *id.* at 3 ("Sergeant Lott told me that he was concerned the driver was intoxicated. . . ."), *id.* at 5 ("Lott said that Mr. O'Hara then attempted the test, and the following results were observed."); *id.* at 8 ("If it is assumed that the information provided by Sgt. Lott and Officer Butler-Cherry accurately characterizes what they observed . . ., then the totality of circumstances. . . .").

will be entirely capable of reviewing the video evidence and determining whether Defendants' testimony is credible without Ijames's testimony. *See Nichols*, 154 F.3d at 883 ("Weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony." (citation modified)).

In short, Opinion I is so couched in legal conclusions and impermissible credibility determinations that it would provide the jury with no information other than what Ijames believes the verdict should be. *See Williams*, 922 F.2d at 1360 ("A trial court may . . . exclude opinion testimony if it is so couched in legal conclusions that it supplies the fact finder with no information other than what the witness believes the verdict should be." (citing *Hogan*, 812 F.2d at 411)); *Lee*, 616 F.3d at 809 ("Opinions that 'merely tell the jury what result to reach' are not admissible."). Thus, Opinion I will be excluded.

### 2. Opinion II

Opinion II is inadmissible for the same reasons as Opinion I. Ijames's opinion that "[i]n assessing whether the overall force used and referenced above was consistent with generally and commonly accepted police training and practice, the totality of circumstances presented should be viewed in the context of the key factors referenced under *Graham v. Connor*" invades the province of the Court by purporting to instruct the jury on matters of law. *See S. Pine Helicopters*, 320 F.3d

at 841 ("Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them."); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury."). And Ijames's opinions that Defendant Lott's uses of force were "not excessive" and that a reasonable "officer facing these or similar circumstances would have believed that the key factors in *Graham v. Connor* had been met" are impermissible legal conclusions. *See Schmidt*, 557 F.3d at 570 (affirming the district court's exclusion of a police-practices expert's testimony as impermissible legal conclusion where the expert's "report consisted of his opinions regarding the overall reasonableness of the procedures used and, as such, were not fact-based opinions"); *Brossart v. Janke*, 859 F.3d 616, 624 (8th Cir. 2017) ("Whether the force used was constitutionally excessive is an issue of law." (citing *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015))).

Opinion II invades the province of the jury by drawing inferences from Defendants' unsworn characterizations of the incident, reaching conclusions about what the video evidence shows, and "mirroring [Defendants' hearsay] version of events" "in the guise of a professional opinion." *See Nichols*, 154 F.3d at 883 (explaining that expert testimony "is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the

jury" (citation modified)); *Lee*, 616 F.3d at 809 (affirming the exclusion of expert testimony as to what was shown in surveillance footage because "[t]he opinion would not have assisted the jury but rather would have told it what result to reach"); *Westcott*, 68 F.3d at 1076 ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion." (citation modified)); *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992) (holding that "expert testimony cannot be used solely to bolster the credibility of . . . fact-witnesses by mirroring their version of events"). The jurors will be entirely capable of reviewing the video evidence, assessing the credibility of the witnesses' testimony, and drawing reasonable inferences about what happened during Plaintiff's arrest without Ijames's testimony. *See Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980) ("Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous.").

In an apparent attempt to distance Ijames's statements concerning Defendant Lott's conduct in the context of policing standards from his impermissible legal conclusions about the reasonableness of his conduct in the context of the *Graham* factors, Defendants initially assert that Ijames's opinions concerning Defendant Lott's uses of force "are not in reference to the Fourth Amendment and/or its

'reasonableness' standard. Rather, Mr. Ijames has framed his opinions from the applicable national standards (IACP/NCP) and local agency standards (University City PD) for police practices." [ECF No. 73 at 6]. But Defendants later contend that "a discussion of [the *Graham*] factors as considerations that are embodied in police training and . . . practices is appropriate" because "Ijames has explained that the *Graham* factors must be considered in determining 'whether the overall force used and referenced above was consistent with generally and commonly accepted police training and practice,'" *id.* at 8 (quoting [ECF No. 70-2 at 24]), and in his deposition, "Ijames specifically refers to the *Graham* factors and how those factors are taught to and applied by police officers." *Id.* Plaintiff counters that, by setting out "how he thinks the evidence . . . does or does not meet each factor of *Graham v. Connor*," "Ijames is quite literally stating what the law is and how it should be applied."[12] [ECF No. 74 at 4]. The Court agrees with Plaintiff.

As Defendants acknowledge and the record makes clear, both the IACP and UCPD policies unsurprisingly incorporate the Fourth Amendment's reasonableness standard and the *Graham* factors. *See, e.g.*, [ECF No. 82-15 at 3] ("The decision [to use the X26 Taser] must be made dependent on the actions of the subject(s) or

---

[12] Plaintiff also notes that Ijames's brief summary of the IACP policy in his report does not include the statement that taser use "should be prohibited on those who passively resist when they are not reasonably perceived as an immediate threat." [ECF No. 74 at 4].

threat facing the officer(s), and the totality of the circumstances surrounding the incident. In any event, the use of the X26 Taser must be reasonable and necessary."); [ECF No. 70-2 at 19] (stating that a taser "is generally authorized to be used in circumstances where grounds to arrest or detain are present, and the subject's actions cause a reasonable officer to believe that physical force will be used by the subject to resist the arrest or detention"); [ECF No. 70-3 at 3] ("That's kind of how officers are taught, to make decisions that are, you know, objectively reasonable. They assess the facts and then consider the totality of the *Graham* factors."); Electronic Control Weapons, IACP Law Enforcement Policy Center (Sept. 2023) https://www.theiacp.org/sites/default/files/2023-09/Electronic%20Control%20Weapons%20-%202023.09.pdf (citing *Graham* for the proposition that tasers are "authorized to be used when it is objectively reasonable under the totality of the circumstances and what is known to the officer at the time"). Thus, regardless of whether Ijames couches his impermissible legal conclusions in the context of *Graham* or the IACP and UCPD standards, it is clear that Opinion II would provide the jury "with no information other than what [Ijames] believes the verdict should be." *See Williams*, 922 F.2d at 1360; *Lee*, 616 F.3d at 809 ("The opinion would not have assisted the jury but rather would have told it what result to reach."); *Peterson*, 60 F.3d at 475 (holding that it was an abuse of discretion to allow police-practices expert to testify that "each action the

41

officers took was consistent with 'nationally accepted standards'" and that "the officers' conduct comported with the 'standards under the Fourth Amendment'" because it was a "statement of legal conclusion"). As such, Opinion II must be excluded.

### IV.    Conclusion

Based on the foregoing analysis, Defendants' Motion for Summary Judgment is denied. Plaintiff's Motion to Exclude Defendants' Expert is granted. None of Ijames's proffered opinions are admissible. Thus, his testimony, report, and deposition will be excluded.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [ECF No. 64], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Defendants' Expert, [ECF No. 69], is **GRANTED**.

Dated this 4th  day of September, 2025.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE